UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID T. LONG, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 02-1374 (JDB) |
| ) | |
| v. ) | |
| ) | |
| HOWARD UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DEFENDANT'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

Defendant Howard University (the "University") respectfully submits the following objections to the Jury Instructions and Verdict Form distributed by the Court on December 15, 2006. The University incorporates by reference all objections and arguments set forth in its proposed jury instructions, objections to plaintiff's proposed jury instructions (Docket No. 146-1), motions for judgment under Rules 50 and 52(c), and all other papers previously filed in this action.

At the outset, the University objects to the omission of an instruction that there can be no liability under Section 504 of the Rehabilitation Act unless the jury finds that the University failed to accommodate Mr. Long "solely by reason of" his disability. 29 U.S.C. § 794(a) (emphasis added). *See* Soledad v. United States Dep't of Treasury, 304 F.3d 500, 504-05 (5th Cir. 2002) ("Liability [under § 504] can only be found when the discrimination was 'solely by reason of her or his disability,' not when it is simply a 'motivating factor'"); Amir v. St. Louis Univ., 184 F.3d 1017, 1029 n.5 (8th Cir. 1999) (*en banc*) (finding, in a reasonable accommodation case, that "Rehabilitation Act claims are analyzed in a manner similar to ADA

1

claims except that the Rehabilitation Act imposes a requirement that a person's disability serve as the <u>sole</u> impetus for a defendant's adverse action against the plaintiff"). It would be error to submit this case to the jury without giving an instruction on this point. <u>Soledad</u>, 304 F.3d at 505 (holding that it is error to instruct the jury that discrimination need only be a "motivating factor" to give rise to liability Section 504); <u>Wood v. President & Trustees of Spring Hill College</u>, 978 F.2d 1214, 1219-20 (11th Cir. 1992) (discussing "solely" jury instruction). (*See also* Docket No. 146-1 at 24 (University's proposed instruction)).

The requested Instruction is essential because Plaintiff has produced evidence that the University acted for reasons other than his disability, including retaliation for filing a lawsuit and a general dislike for him. Such evidence, if accepted by the jury, would defeat Plaintiff's claim if he is required to show that he was denied an accommodation "solely by reason" of a disability.

Furthermore, the University objects to the omission of D.C. Standard Civil Jury Instructions 12-2 (proximate cause) and 12-7 (duty to mitigate).

Instruction 12-2 (proximate cause) is necessary to inform the jury that the University is only liable for damages it proximately caused by the conduct alleged in <u>this</u> case. This is particularly important because the jury has heard evidence and argument that tends to suggest that the University caused Mr. Long's lung condition.

Instruction 12-7 (duty to mitigate) should be given because Mr. Long had an obligation to mitigate his damages and there is evidence that he did not do so. For example, he could have mitigated his damages by (a) completing his draft dissertation, (b) formally re-applying for admission in 1995, as the University suggested to him (Pl. Ex. 19), or (c) accepting the conditions proposed in the University's letter of April 30, 1998 (Pl. Ex. 28) by returning to

Howard University to take an examination to demonstrate his mastery of present-day knowledge and to then complete his dissertation.

## I. GENERAL INSTRUCTIONS

**No. 2-2 – Judicial Notice**. There is no need for this instruction since the Court did not take judicial notice of any facts.

**No. 3-4 – Failure to Produce Stronger Available Evidence.** As a threshold matter, this instruction was not requested by either party in the Joint Pretrial Statement (Docket No. 111-1) or afterwards, and need not be given. The proposed instruction relates to Plaintiff's claim that the University did not produce course restoration forms for some students. However, there has been absolutely no evidence that these documents were <u>available</u> to be produced by the University. Ms. Lyons testified that she searched for and produced the documents that were available. Ms. Lyons also testified that there is no particular reason to save course-restoration forms for students who have graduated. There is no evidence that any were destroyed or lost with reckless disregard for their potential relevance in a future lawsuit. *See* <u>Battocchi v. Washington Hosp. Ctr.</u>, 581 A.2d 759, 765-67 (D.C. 1990); <u>Rice v. United States</u>, 917 F. Supp. 17, 19 (D.D.C. 1996). Therefore, the University objects to the proposed instruction, which "risks creating evidence from nonevidence." <u>Rice</u>, 917 F. Supp. at 19. Indeed, the Court has stated previously that it would <u>not</u> give an "adverse inference" instruction.

## II. THE PLAINTIFF'S CLAIMS

**Nature of Plaintiff's Claims.** There are several issues with this proposed Instruction.

a.  Plaintiff should not be allowed to present a claim that the University applied a discriminatory criteria that had "the effect of screening out individuals with a disability." As discussed further below, there is no private cause of action for violation of "disparate impact"

regulations issued under the Rehabilitation Act. <u>Alexander v. Sandoval</u>, 532 U.S. 275, 280 (2001).

  b. The University also objects to use of the imprecise phrase "time limits for the completion of degree requirements" to describe the allegedly discriminatory criteria. There are several "time limit" rules under the Graduate School's Rules. Mr. Long's claim is that no accommodation was made to the limits on <u>course viability</u> – not <u>all</u> time-related rules.

  c. The University also objects to the Court's characterization of its position and submits that the following revision should be made:

> Howard University denies that it breached any contract. The University also denies that it violated any obligation under the Rehabilitation Act, and contends that the adjustments requested by Mr. Long would fundamentally alter the Ph.D. program respecting the requirements that students complete a dissertation and demonstrate their current knowledge of their field. The University also contends that all of Mr. Long's claims are barred by the statute of limitations.

**Rehabilitation Act – Reasonable Accommodation Essential Elements.** The University objects to the formulation of this instruction on several grounds:

<u>First</u>, it omits the requirement that Mr. Long has the burden of proving that he affirmatively requested modifications <u>to accommodate limitations caused by his disability</u>. <u>Mershon v. St. Louis Univ.</u>, 442 F.3d 1069, 1077 (8th Cir. 2006) (plaintiff has "initial burden" to show that he requested "reasonable specific accommodations" for his disability); <u>Zukle v. Regents of the Univ. of Cal.</u>, 166 F.3d 1041, 1046-46 (9th Cir. 1999) ("[W]hen the plaintiff alleges a failure to accommodate, part of the plaintiff's initial burden includes 'showing the existence of a reasonable accommodation'").

<u>Second</u>, this instruction is overly broad in its reference to "disability," and does not incorporate the critical principle that "it is the <u>limitation</u> arising from the disability that determines the need for accommodation, not merely the existence of the disability." July 17,

4

2006 Memorandum Opinion at 14 (Docket No. 107) (emphasis added); Taylor v. Principal Fin. Group, Inc., 93 F.3d 155, 163 (5th Cir. 1996) (covered entities required to "reasonably accommodate limitations, not disabilities"). Although this "necessity" point is vaguely referred to in the subsequent "Reasonable Accommodation" instruction, it is a fundamental element of Plaintiff's claim and should be described as such in the summary instruction.

Thus, the University submits that the statement of the third and fourth elements should be revised as follows: "3. Mr. Long gave the University notice of limitations caused by his disability. 4. Mr. Long requested a specific reasonable accommodation for limitations in his functioning caused by his disability, and that accommodation was necessary in light of those limitations."

**Reasonable Accommodation.** The University objects to this instruction to the extent that it does not expressly state the principle that an accommodation is not reasonable when it is not necessary to accommodate a limitation caused by a disability. July 17, 2006 Memorandum Opinion at 12-14; Murphy v. Bridger Bowl, 150 Fed. App'x 661, 663 (9th Cir. 2005) (upholding dismissal of claim where requested accommodation was not necessary); Larsen v. Carnival Corp., 242 F. Supp. 2d 1333, 1344-45 (S.D. Fla. 2003) (finding requested modification was unnecessary because plaintiff had previously enjoyed full participation without the accommodation). Accordingly, the University proposes that the final sentence in the second paragraph be revised: "Thus, a modification is not reasonable if it is not necessary to accommodate a specific limitation caused by a disability, such as breathing or walking." (emphasis added to show changes).

Moreover, the University submits that the following sentence should be inserted before the final line in the instruction: "The mere fact that the University has made time-related

modifications for other students does not mean that Mr. Long's requests were reasonable."[1] This would provide critical context for the instruction that "[t]he reasonableness of Mr. Long's request must be evaluated in light of his particular circumstances."

**Fundamental Alteration.** The University objects to this instruction to the extent that it uses the phrase "proper use of the degree," which does not reflect the need for students to "earn the degree" (as opposed to how they use it).

The University further objects to the final sentence in paragraph three, which is not appropriate in a reasonable accommodation case. Wynne v. Tufts Univ. School of Medicine, 932 F.2d 19, 26 (1st Cir. 1991) ("[H]inging judicial override on 'a substantial departure from accepted academic norms,' is not necessarily a helpful test in assessing whether professional judgment has been exercised in exploring reasonable alternatives for accommodating a handicapped person.").

If this sentence is not stricken, it should be altered to state: "You should presume that a decision is genuinely academic if the university has offered any rational justification for the decision." As the court explained in Wynne, a university need only offer a rational justification for its academic decisions to be presumed reasonable:

> If the institution submits undisputed facts demonstrating that the relevant officials within the institution considered alternative means, their feasibility, cost and effect on the academic program, and came to a <u>rationally justifiable conclusion</u> that the available alternatives would result either in lowering academic standards or requiring substantial program alteration, the court could rule as a matter of law that the institution had met its duty of seeking reasonable accommodation."

Id. (emphasis added).

---

[1] Zukle, 166 F.3d at 1050 ("[S]imply because the Medical School had granted other students' requests to proceed on a decelerated schedule does not mean that Zukle's request was reasonable. The reasonableness of Zukle's request must be evaluated in light of Zukle's particular circumstances.").

**Imposition of Discriminatory Criteria.** As noted above, <u>Alexander v. Sandoval</u>, 532 U.S. 275, 280 (U.S. 2001), teaches that there is no private cause of action to enforce any "disparate impact" regulations issued under the Rehabilitation Act. Accordingly, Mr. Long cannot bring a claim for damages under the Rehabilitation Act on the ground that discriminatory criteria have a disparate impact on disabled students. This claim should not be submitted to the jury.

There is also <u>no evidence</u> to support a jury finding that the course viability rules, as applied, "disproportionately impact individuals with disabilities." Not a single example was given of any other disabled student who was impacted by the course-viability rules. To the contrary, Dean Orlando Taylor testified that, in extenuating circumstances, the University tries to "work with students" to help them succeed. There has been a failure of proof on this claim, and it should not be allowed to go to the jury.

If the Court disagrees and this instruction is given, the University objects to the use of the phrase "time limits," which is vague and overbroad in light of the evidence presented. The only time limits at issue here relate to course viability. Thus, the University proposes that following revision: "In this case, Mr. Long claims that the University's <u>time limits related to the viability of course credits</u> screen out or tend to screen out students with a disability." (emphasis added to show changes).

In addition, the instruction mischaracterizes the University's position and should be changed: "The University claims that <u>completing a dissertation and demonstrating currency of knowledge are</u> necessary academic requirement<u>s</u> that <u>are</u> applicable to all students, and <u>its enforcement of these requirements</u> does not discriminate against disabled students." (emphasis added to show changes). These are the criteria enforced by the University in Mr. Long's case.

7

**Statute of Limitations – Rehabilitation Act.** The University objects to this instruction because it too narrowly limits the accrual of the cause of action and ignores the University's position respecting Mr. Long's failure to complete his dissertation. The cause of action accrued when Mr. Long knew (or with reasonable diligence should have known) that the University was declining to provide a reasonable accommodation. The University proposes that the fourth paragraph be revised as follows:

> Mr. Long filed his claims on July 9, 2002. In this case, I have determined as a matter of law that these claims accrued when Mr. Long knew, or with the exercise of reasonable diligence should have known, that the University, as he alleges, had declined his request for modification of its academic policies.

Also, the following sentence should be added to the end of the third paragraph to explain the law in light of the evidence: "He is bound to do so even though he may have a 'hope' that the defendant may change its mind."

**No. 11-1 and 11-17 - Contract – Defined; Breach of Contract – Defined.** Mr. Long's claim that the University breached an educational contract is no longer at issue in this case. It was rejected in the Court's summary judgment ruling. It would be a grave error to include any reference to an educational contract in the jury instructions.

First, the Court has already ruled that the University cannot have breached such a contract by declining to modify its own rules. July 17, 2006 Memorandum Opinion at 21.

Second, there has been no evidence presented at trial that a contract was formed "when Mr. Long enrolled at Howard University as a student" in 1982 pursuant to which the University "agreed to make reasonable accommodations to its academic requirements." Mr. Long gave no such testimony. Nor did anyone else.

Third, the only evidence of an anti-discrimination policy is a University EEO policy issued in 1999. (Pl. Ex. 60). Mr. Long has not been enrolled as a student at Howard University

since 1990. Thus, Mr. Long has never had any contractual right to receive any benefit from the 1999 policy, which is completely irrelevant to any breach of contract claim. There is also no evidence that Mr. Long was even aware of the 1999 policy, that he relied upon it, or that he gave any consideration for it. Nor is there evidence that he complied with his duties under that policy, such as his duty to bring "complaints of impermissible discrimination" to the Dean within 60 calendar days following the alleged discrimination. (Pl. Ex. 60, at 15-16.) Therefore, the elements of contract cannot be satisfied.

Fourth, there is no mention of an "educational contract" regarding EEO policies in Plaintiff's Complaint, interrogatory answers, or in his statement of his claims in the Joint Pretrial Statement (Docket No. 111 at 2-5). For example, the sole "contract" described in Mr. Long's interrogatory answers is as follows: "Howard agreed that David could return when he was medically able and complete his Ph.D., and that his status would be preserved until that time." (Def. Trial Ex. 37 [in Exhibit Binder], Answer to Interrogatory No. 20).

In sum, this instruction would introduce an entirely new issue into the case after the close of evidence. It should not be allowed. The University was not given notice that Plaintiff was alleging a breach of contract based on failure to follow a 1999 EEO policy or any earlier EEO policy.

**No. 11-5 Consideration.** This instruction should be modified to state that, if the parties amend a contractual relationship, consideration must be given by each side for the new rights or obligations included in the amendment. Rinck v. Association of Reserve City Bankers, 676 A.2d 12, 17 (D.C. 1996); Hershon v. Hellman Co., 565 A.2d 282, 283 (D.C. 1989).

**Educational Contract (p. 51).** For the reasons set forth above, this instruction should not be given to the jury.

**No. 11-12 Contract to be Construed as a Whole.** As there is no written contract at issue in this case, this instruction need not be given.

**Statute of Limitations – Contract.** The University objects to this instruction because it does not include three critical principles that are necessary to inform the jury's deliberations on this issue:

First, it is imperative that the jury be informed that, once a demand for performance is made, after the "lapse of a reasonable time" the demand is deemed to be "refused." Bembery v. District of Columbia, 758 A.2d 518, 520 (D.C. 2000).

Second, the jury should be informed that Mr. Long's subjective hope that the University would change its position and honor the alleged agreement is insufficient to toll the statute of limitations. While this is implicit in the Court's proposed instruction, it should be more clearly set forth.

Third, unlike the instruction respecting the Rehabilitation Act statute of limitations, the Court failed to include here any instruction that a request for "reconsideration" does not affect the limitations period. Allison v. Howard Univ., 209 F. Supp. 2d 55, 59 (D.D.C. 2002); Fitzgerald v. Seamans, 553 F.2d 220, 230 (D.C. Cir. 1977); Cunningham & Assocs. v. Dugan, 686 A.2d 1040, 1042 n.3 (D.C. 1996) ("A statute of limitations cannot be unilaterally extended by a plaintiff making a new demand for payment when initial demands for payment have been unsuccessful"), *withdrawn* 1996 WL 744964 (D.C. 1996).

Accordingly, the University proposes inserting the following paragraph before the final paragraph of the instruction:

> A plaintiff is on notice that a demand or request for performance of the other party's duties under a contract has been refused once a reasonable amount of time passes after the demand or request is made without the other party meeting its duties. If a demand has been refused, making the same demand again does not change the fact that the contract was breached when the first demand was refused. A plaintiff's subjective hope that a defendant will change his mind is not enough to extend a statute of limitations when a contract has already been breached.

**Rehabilitation Act – Monetary Damages.** The University objects to this instruction on the ground that it does not adequately explain the concept of "deliberate indifference." A defendant acts with deliberate indifference only when (1) it is aware that a harm to a federally protected right is substantially likely because it "has notice that an accommodation is required," and (2) its failure to act is deliberate (not merely negligent). Lovell v. Chandler, 303 F.3d 1039, 1056 (9th Cir. 2002). The two elements explained in Lovell should be incorporated into the first paragraph of the proposed instruction:

> The University can be said to have acted intentionally if it acted with deliberate indifference. To show deliberate indifference, Mr. Long must prove by a preponderance of the evidence that (1) the University had notice that an accommodation was required on account of a disability, and (2) the University acted in a deliberate way that made it substantially likely that there would be harm to a federally protected right. Mere negligence by the University is not enough to establish that it acted with deliberate indifference. If you find that the University acted with deliberate indifference, you may then proceed to determine the amount of damages. If you find no such deliberate indifference, you may not award any damages.

The reference to "eligibility criteria" in the second paragraph should also be eliminated for the reasons previously stated.

Any references to "incidental" or "consequential" damages should be eliminated because there was no evidence of such damages. For example, there is no evidence of any "injury to persons or property." The only damage claim presented was for lost earnings, and no testimony was given by Mr. Long as to any other type of damages.

This Instruction is also improper to the extent that it describes the University's "wrongful conduct" which is an issue for the jury to decide. A prefatory comment of the following type is necessary: "From this point on, these instructions on damages assume that you have first found that the University violated the Rehabilitation Act, but that is an issue for you to decide before you can reach the question of damages.

**Lost Earnings – Physical Ability to Work.** The University objects to this instruction on two grounds.

First, including the year "1995" in the instruction is improper. When Mr. Long could have finished his Ph.D., and when his claim accrued, are disputed facts for the jury to decide.

Second, the second sentence of the instruction is improper and undercuts the University's principal damages defense: that Mr. Long's physical disability places limits on his ability to work at all. If the jury concludes that Mr. Long is not capable of working in the future because of his lung disability, then there can be no future earnings loss. Likewise, if he could not work since 1995 because of his lung disability, there can be no past earnings loss.

Dr. Simon testified that, although Mr. Long could have finished his Ph.D. after his condition stabilized in the early 1990's, he will have physical limitations for the rest of his life, and he is "incapacitated" after a day of activity. Mr. Long testified about headaches and other ailments. The jury could conclude from this testimony that Mr. Long cannot hold a job as a Physiologist for physical reasons. It is improper for the Court to take this issue from the jury with an instruction that these factors should not be considered.

**Lost Earnings – Damages Incurred Prior to July 9, 1999.** At the Court's invitation, the University proposes the following instruction about the date from which lost earnings can be recovered:

If you decide to award lost earnings to Mr. Long, your award may only compensate Mr. Long for lost earnings he may have incurred after his cause of action accrued. In no event may you award any damages for losses incurred before July 9, 1999.[2]

**Nominal Damages.** The University objects to an instruction on nominal damages, which has not been requested by either party.

## III.   VERDICT FORM

The Verdict Form should be modified to conform to any changes made in the jury instructions, as set forth above or otherwise. In addition, the University respectfully submits the following objections to the formulation of issues in the Verdict Form:

**Rehabilitation Act – Reasonable Accommodation.** This Question should be revised to logically re-order the elements, add the "necessity" requirement, and avoid the assumption that the disability at issue gives rise to any relevant limitations on functioning. The following revision is suggested:

> Did Mr. Long prove, by a preponderance of the evidence, that he notified the University that he had limitations caused by a disability, that he requested a reasonable modification that was necessary to accommodate his limitations, that he was otherwise qualified to complete the Ph.D. requirements with the requested modification, and that the University failed to make a reasonable modification?
>
> If you answered "no" to any of these questions, then skip the remainder of Part I-A and proceed to Part I-B.

---

[2]   L'Enfant Plaza E., Inc. v. John McShain, Inc., 359 A.2d 5, 7 (D.C. 1976) (holding that damages suffered outside the limitations period cannot be recovered). See Jung v. Mundy, Holt & Mance, P.C., 372 F.3d 429, 433 (D.C. Cir. 2004) (even in the case of a "continuing tort," a plaintiff "may recover only for injuries attributable to the part of the continuing tort that was committed within the limitations period") (quoting Beard v. Edmonson & Gallagher, 790 A.2d 541, 584 (D.C. 2002)); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002) (a party "loses the ability to recover" for discrete acts of discrimination occurring outside the limitations period).

**Rehabilitation Act – Eligibility Criteria.** In keeping with the objections set forth above, Questions B(1) and B(2) should be eliminated in their entirety. If they are nonetheless allowed, Question B(1) should be revised as follows:

> Did Mr. Long prove, by a preponderance of the evidence, that Howard University's time limits for the viability of course credits screen out and disproportionally impact individuals with disabilities?

Question 2 should be revised as follows:

> Did Howard University prove, by a preponderance of the evidence, that its criteria are substantial or fundamental academic requirements?

**Contract.** If the Court allows the "educational contract" claim to go to the jury, a separate question should be presented as to that claim.

**Part III- Damages.** Question A should ask whether the University "intentionally discriminated against Mr. Long on the sole basis of his disability."

Question B should eliminate references to incidental or consequential damages.

Question C should be revised as follows: "How much compensation for lost earnings do you award to Mr. Long?"

                                              Respectfully submitted,

                                              /s/
                                        Daniel I. Prywes (D.C. Bar No. 342394)
                                        Jacob A. Kramer (D.C. Bar No. 494050)
                                        BRYAN CAVE LLP
                                        700 Thirteenth Street, N.W., Suite 700
                                        Washington, D.C. 20005
                                        Phone: (202) 508-6000
                                        Fax:   (202) 220-7394

December 17, 2006                        Counsel for Defendant Howard University