**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **DAVID T. LONG,**<br><br>    **Plaintiff,**<br><br>        **v.**<br><br>**HOWARD UNIVERSITY,**<br><br>    **Defendant.** |

**Civil Action No.  02-1374 (JDB)**

<u>**MEMORANDUM OPINION**</u>

        Plaintiff David Long, a former doctoral ("Ph.D.") candidate at Howard University, brought

this action against the University alleging discrimination on the basis of disability in violation of

the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 <u>et</u> <u>seq.</u>, and the Americans with

Disabilities Act, 42 U.S.C. § 12101 <u>et</u> <u>seq.</u>, and breach of contract under District of Columbia law.

A jury trial was held on plaintiff's Rehabilitation Act and contract claims from December 11-19,

2006, with one contract claim resolved by the Court in defendant's favor prior to jury

deliberations.  The jury returned a verdict finding that defendant had failed to provide a reasonable

accommodation for plaintiff's disability in violation of the Rehabilitation Act, but concluded that

the claim was barred by the statute of limitations.  The jury also found in defendant's favor on the

remaining breach of contract claim.

        Pending before the Court are plaintiff's motion for a new trial pursuant to Fed. R. Civ. P.

59, and defendant's cross-motion for judgment as a matter of law or, in the alternative, for a new

trial, on the issues decided adversely to defendant.  Upon consideration of the entire record, the

Court concludes that the jury was properly instructed on the statute of limitations, and that its

verdict is supported by the evidence.  Indeed, the Court's independent review of the evidence

admitted at trial leads it to conclude that plaintiff's non-jury claims for equitable relief under the Rehabilitation Act and ADA for the alleged failure to provide a reasonable accommodation also are barred by the statute of limitations.  Pursuant to Fed. R. Civ. P. 52, the Court sets forth its findings of fact and conclusions of law concerning those equitable claims below.

The Court further concludes that its earlier entry of judgment as a matter of law in defendant's favor on plaintiff's "educational" contract claim was appropriate in light of the absence of evidence from which a reasonable juror could find the contract alleged by plaintiff. Accordingly, plaintiff's motion will be denied, and a final judgment will be entered in defendant's favor on all remaining claims.[1]  In light of that disposition, the Court has no occasion to reach the issues raised in defendant's cross-motion for judgment as a matter of law.

## STANDARD OF REVIEW

Rule 59(a) of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  Under this provision, a new trial should be granted "only when the court is convinced that the jury verdict was a 'seriously erroneous result' and where denial of the motion will result in a 'clear miscarriage of justice.'" In re Lorazepam & Clorazepate Antitrust Litigation, 467 F. Supp. 2d 74, 87 (D.D.C. 2006) (quoting Warren v. Thompson, 224 F.R.D. 236, 239 (D.D.C. 2004)); accord Wild v. Alster, 377 F. Supp. 2d 186, 188 (D.D.C. 2005).  "Generally, a new trial may only be granted when a manifest error of law or fact is

---

[1] For ease of reference, the Court will refer to plaintiff's memorandum in support of his motion for new trial as "Pl.'s Mem.," and to defendant's memorandum in opposition to plaintiff's motion as "Def.'s Opp."  All exhibits cited in this opinion refer to the parties' trial exhibits unless otherwise noted.

presented." In re Lorazepam & Clorazepate Antitrust Litigation, 467 F. Supp. 2d at 87.

Moreover, "the court should be mindful of the jury's special function in our legal system and

hesitate to disturb its finding." Wild, 377 F. Supp. 2d at 189 (quoting Nyman v. FDIC, 967 F.

Supp. 1562, 1569 (D.D.C. 1997)).   The decision to grant or deny such a motion lies within the

sound discretion of the trial court.   Grogan v. Gen. Maint. Serv. Co., 763 F.2d 444, 448 (D.C. Cir.

1985).

## BACKGROUND

Plaintiff entered the Ph.D. program in the Department of Physiology and Biophysics

("Department") at Howard University in the fall of 1982.  See Pl.'s Ex. 5.  He was formally

admitted as a Ph.D. candidate in 1989, after completion of his coursework, completion of oral

comprehensive examinations, and selection and approval of a topic for his dissertation. See id.  By

late 1990, plaintiff had substantially completed a draft of his dissertation.  See Pl.'s Ex. 47.

However, also by that time, he had been diagnosed with pulmonary fibrosis, a lung disease that

substantially diminished his lung function and thus his ability to be physically active.

See Preliminary Tr., Dec. 12, 2006, at 157-60, 167-69.  Plaintiff thus requested and was granted a

leave of absence, and did not return for the spring semester of 1991.  See Pl.'s Ex. 13.  In March

1992, plaintiff had discussions with Howard University about returning, but he did not reenroll at

that time.  See Official Tr., Dec. 13, 2006, Excerpt 1, at 33-35.  Around the same time, he was

pursuing a lawsuit against the University on a separate controversy concerning his lung disease,

which was ultimately resolved pursuant to a settlement agreement between the parties.[2]  See

Official Tr., Dec. 13, 2006, Excerpt 1, at 33-34, 85, 120-21; Preliminary Tr., Dec. 14, 2006,

---

[2]  The Court limited the admissibility at trial of evidence pertaining to the prior lawsuit and
settlement, as set forth in the Order dated December 8, 2007.

at 73-75, 166.

Plaintiff contacted the University again in 1995 seeking to complete and defend his dissertation.  See Pl.'s Ex. 20 and 25.  By letter dated July 31, 1995, he submitted an "official request" to Dr. James Scott, the Associate Dean for Educational Affairs, and Dr. LaVal Cothran, Chairman of the Department of Physiology and Biophysics, requesting reinstatement as a graduate student in the Department and permission to defend his dissertation, as he believed he and the Department had already agreed upon before his leave of absence commenced.  See Pl.'s Ex. 20; see also Pl.'s Ex. 13; Official Tr., Dec. 13, 2006, Excerpt 1, at 31-33.  That letter was preceded by discussions earlier in 1995, from which plaintiff had concluded there might be some resistance to his reinstatement.  See Pl.'s Ex. 25.  Indeed, in a subsequent letter to the University dated September 26, 1995, plaintiff described his requests to Dr. Coleman and Dr. Cothran during the preceding months as meeting significant resistance, noting that "the only choices that came out of those conversations were: there is nothing we can do for you; therefore, you can try to contact Dr. Scott concerning these matters or you can go ahead and contact your lawyer."  Id.  By letter dated November 21, 1995, Orlando Taylor, Dean of the Graduate School of Arts and Sciences, responded to plaintiff's request for reinstatement, advising plaintiff to apply for readmission and, further, that the University time limits on validity of academic credits (the "ten-year rule") and completion of degrees (the "five-year rule") would apply.  Pl.'s Ex. 26.  In particular, Dean Taylor stated:

> Upon readmission, your status as a student in the Graduate School will have to be determined by the Department of Physiology and Biophysics.  You should be aware that the Department will have to consider your status in light of provisions in the Rules and Regulations for the Pursuit of Academic Degrees for the Graduate School.  (See enclosed copy.)  Under Article VI, Section I.C, a student seeking a doctor of philosophy degree may not "receive[] credit toward the degree for a course which the student pursued more than ten (10) years prior to the

time the student presents himself or herself for the student's final examination."
Under Article VI, Section 6, "[c]andidacy for the Ph.D. degree shall be valid for no
more than five calendar years."

Finally, I am advised that while you presented a draft of your dissertation, a
final version was never accepted by the faculty committee.  Under Article VI,
Section 9, acceptance of the dissertation by the faculty committee is required prior
to the oral examination in defense of the dissertation outlined in Section 10.

Id. at 1-2.[3]  Plaintiff does not recall receiving the letter, although the letter was correctly

addressed.  See Official Tr., Dec. 13, 2006, Excerpt 1, at 121-22.

About two years later, plaintiff and his wife sought action directly from the president of

Howard University, Patrick Swygert, by visiting his office personally on January 20, 1998.  See

Pl.'s Ex. 29, at 1.  Plaintiff was feeling unwell and remained in his vehicle, while his wife

unsuccessfully sought out Swygert.  Id. at 1.  Swygert's staff referred Mrs. Long to an attorney for

the University, but no recourse was provided.  Id.

A few months thereafter, Dean Taylor sent plaintiff a letter dated April 30, 1998, that, on

its face, indicates it was transmitted by facsimile.  See Pl.'s Ex. 28.  Dean Taylor informed

plaintiff that the Graduate School of Arts and Sciences had reviewed the issue of restoration of his

candidacy for a doctoral degree in Physiology.  Id. at 1.  Dean Taylor again did not offer plaintiff

the accommodation he sought -- permission to return to defend his dissertation and then an award

of the Ph.D. degree -- and instead advised him that the restoration of his candidacy would require

satisfaction of additional conditions:

---

[3]  There was extensive testimony on whether the five-year rule and the ten-year rule were
waived for other students and the circumstances of any waiver.  The Court finds it unnecessary to
delve into those factual issues to resolve plaintiff's motion for new trial, but notes that the jury
verdict reflects a finding that those rules were not fundamental to the Ph.D. program in
Physiology.  See Jury Verdict, Section A.2.  The statute of limitations issues raised by plaintiff's
motion for new trial do not require revisiting that part of the verdict.

Since you were unable to complete the Ph.D. program within the time requirements as described in the School's "Rule and Regulations for the Pursuit of Academic Degrees" (copy enclosed), the Department of Physiology, pursuant to the aforementioned rules and regulations, is pleased to advise you that it will recommend that your candidacy be restored provided that the following conditions are satisfied:

1.      That you pass a comprehensive examination on the core courses required in the Physiology Ph.D. program which demonstrate command over the essential body of knowledge in the field on the basis of present-day standards; and

2.      After you have passed such examination, your dissertation committee in the Department of Physiology will undertake a review to determine whether your dissertation project has been rendered obsolete by the current state of the art in the area of your research;
   a.      if the project is determined to be current, then you will be permitted to begin working with the committee to bring the draft document into a form acceptable for oral defense.
   b.      if the project is determined not to be current, then you will have to submit an acceptable research proposal on a new project.

Upon successful completion of these conditions, the time requirements as described in Article VI, Section 1, paragraph C, will be waived and your candidacy would be restored.  Thereafter, you could begin working toward the defense of your dissertation as governed by Article VI of the School's rules and regulations.

Id.  Plaintiff also does not recall receiving this letter.  Official Tr., Dec. 13, 2006, Excerpt 1, at 126.  However, his subsequent letter to the president of the University describing the refusals to readmit him on the terms he sought suggests that he was aware of at least the 1995 or 1998 letter, or both.  In that letter, dated June 14, 1999, plaintiff described his frustration at the refusals of other University officials to readmit him to defend his dissertation:

I have been trying to return to Howard University to complete my dissertation defense, as we agreed, but I keep running into these "brick walls."

When I begin to explain my situation to Deans, Administrators, etc., at Howard University, just as I have tried to do in this letter, they are very sympathetic at first and they immediately want to help. . . . .  until they are informed of the medical lawsuit I brought against Howard on behalf of my wife and children.  The University gave me permission to freeze my student status and

the status of my dissertation defense but now Howard University seems to have "amnesia."  I believe now, with every fiber of my being, that Howard University is treating me harshly because I brought that medical lawsuit against the University.

Pl.'s Ex. 29, at 2-3.

The president of Howard University responded by letter dated July 9, 1999.  Pl.'s Ex. 30. That response, in essence, echoed the requirements set forth in the 1995 and 1998 letters -- plaintiff would be required to reapply for admission, and his status upon readmission would be determined by the Department in light of the Rules and Regulations for the Pursuit of Academic Degrees for the Graduate School, including prior approval of the dissertation by the faculty committee before any oral examination by plaintiff defending it.  Id.

In October 1999, plaintiff submitted a formal application for readmission (Pl.'s Ex. 31), and the Department of Physiology's Graduate Training Committee internally made a decision to accept him to its Graduate Training Program on February 24, 2000, conditioned upon plaintiff's compliance with the University's rules and regulations, which it noted would require plaintiff to take all of the courses that had expired.  See Pl.'s Ex. 36.  This decision was not communicated to plaintiff.  See Official Tr., Dec. 13, 2006, Excerpt 1, at 61.  Plaintiff then submitted another application for readmission in July 2001, and exchanged correspondence with the University on the status of this application.  Pl.'s Ex. 33, 38-41.

On July 9, 2002, plaintiff filed this action against the University, asserting the following claims: first, that the University had failed to make a reasonable accommodation of plaintiff's disability and also had imposed discriminatory screening criteria through temporal requirements for completion of the doctoral degree, in violation of the ADA and the Rehabilitation Act (Counts One and Two); second, that the University had breached two contracts -- one being a promise to award plaintiff a degree upon his successful completion of the requirements for the degree, and

the second being an agreement to permit plaintiff to re-enter the University and defend his

dissertation when he was physically able (Count Three); and third, that the University had caused

him severe emotional distress and resulting damages under District of Columbia law (Counts Four

through Six).  See Compl. ¶¶ 18-48.  During the pendency of this litigation, the Department's

Graduate Committee again decided in February 2004 to accept plaintiff "as a regular student,"

with the observation that all of his coursework and Ph.D. candidacy had expired.  Pl.'s Ex. 37

(emphasis in original).  By letter dated March 9, 2004, Dean Taylor informed plaintiff that, in

light of the passage of so many years since plaintiff's departure, plaintiff's request for readmission

would be denied, and that the offer of conditional reinstatement that the University had made six

years earlier in its April 1998 letter was no longer viable.  See Def.'s Ex. 27.

        After four years of contentious discovery and the resolution of plaintiff's motion for partial

summary judgment, plaintiff's claims were scheduled to proceed to trial in December 2006.[4]  At

the final pretrial conference on December 1, 2006, the Court expressed concern about whether

plaintiff's claims may be barred by a three-year statute of limitations, in the context of addressing

defendant's motion in limine to exclude evidence relating to any alleged violation of the ADA or

Rehabilitation Act prior to July 9, 1999.  See Official Tr., Dec. 1, 2006, at 42-50; see also Pretrial

Order at 4 (filed Dec. 1, 2006).  The Court denied defendant's motion because it was, in effect, a

late-filed motion for summary judgment that, for procedural reasons, could not be resolved on the

merits in the absence of a motion for extension of time in light of Smith v. District of Columbia,

430 F.3d 450, 456-57 (D.C. Cir. 2005).  However the Court advised counsel that it considered the

statute of limitations to present a serious issue, and thus the Court would consider the issue after

---

        [4]  For the decision on plaintiff's motion for partial summary judgment, see Long v.
Howard Univ., 439 F. Supp. 2d 68 (D.D.C. 2006)

presentation of plaintiff's case.[5]  Official Tr., Dec. 1, 2006, at 44-47.  The Court also rejected

plaintiff's contention that defendant had waived the statute of limitations defense by not pursuing

it in discovery, explaining that the assertion of the defense in defendant's answer preserved it for

trial.  Official Tr., Dec. 1, 2006, at 44-46.

　　　Other motions then arose prior to the commencement of trial.   After reviewing plaintiff's

evidentiary proffer in support of its tort claims under District of Columbia law (Counts Four

through Six of the complaint), the Court entered judgment in favor of defendant, finding the

evidence (accepted as true) to be insufficient as a matter of law to support a claim of intentional

infliction of emotional distress and the intertwined claims for loss or consortium and punitive

damages that were premised on that tort.  See Order at 3-7 (filed Dec. 7, 2006).  The Court also

held that plaintiff was not entitled to a jury trial on his claim under Title III of the ADA because

the enforcement provision of Title III, 42 U.S.C. § 2000a-3(a), did not create such a right, nor

could one be found in the Constitution under the Seventh Amendment.  See Preliminary Tr., Dec.

11, 1006, at 2-4.  The Court thus advised the parties that plaintiff's ADA claims would be resolved

by the Court, rather than the jury.  Id.  The Court later reminded the parties that any request for

equitable relief under the Rehabilitation Act also would be resolved by the Court, rather than the

jury.  Official Tr., Dec. 18, 2006, at 124-25.  The impact of this ruling means that the Court must

determine, on its own, whether plaintiff's claims for equitable relief under the ADA and

Rehabilitation Act are barred by the statute of limitations -- a task which the Court undertakes

below.

　　　At the close of plaintiff's case, the Court dismissed plaintiff's claim alleging that the

_____

　　　[5]  The Court later denied defendant's motion for judgment as a matter of law on the statute
of limitations issue, and allowed the jury to consider the issue.  Official Tr., Dec. 18, 2006, at 2.

temporal requirements for completion of the doctoral degree screen out and disproportionately impact individuals with disabilities in violation of the Rehabilitation Act and ADA.  Official Tr., Dec. 18, 2006, at 17-22.  The Court found, and plaintiff conceded, that no evidence of a disproportionate impact on disabled persons had been presented.  Id.  Thus, the Court granted defendant's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 and 52(c).  Id. at 22.

The Court also dismissed plaintiff's claim that the University had breached an "educational contract" that plaintiff described as an agreement to provide reasonable modifications to University academic requirements to ensure the requirements do not result in discrimination on the basis of disability -- that is, an agreement to comply with federal disability law.  See Pl.'s Proposed Jury Instruction No. 14 (filed Nov. 3, 2006). As plaintiff describes the educational contract claim, "[i]t's basically the same as the Rehabilitation Act claim."  Official Tr., Dec. 18, 2006, at 59-60.  The Court found that no evidence had been presented -- either through testimony or exhibits -- as to what the terms of the "educational contract" were, and that the failure of proof could not be cured by a blanket reference to federal law as setting the terms of the alleged contract.  Id. at 119-21.  The Court explained that its ruling was further supported by plaintiff's failure to provide adequate notice to defendant -- either in the complaint or through discovery -- that its breach of contract claim encompassed a breach of an educational contract premised on breach of federal law governing reasonable accommodation.  Id, at 119-20.  Thus, the Court granted defendant's motion for judgment as a matter of law pursuant to Fed. Civ. P. 50 and 52(c) on the educational contract claim.  Id.  The contract claim submitted to the jury was accordingly limited to the remainder of Count Three -- whether the University had agreed that plaintiff could re-enter the University and defend his dissertation when he was physically able.

<u>See</u> Compl. ¶¶ 33-35.

On December 20, 2006, the jury returned a verdict finding that defendant had failed to

provide a reasonable accommodation for plaintiff's disability in violation of the Rehabilitation

Act, but concluding that the claim was barred by the statute of limitations.  <u>See</u> Jury Verdict Form

(filed Dec. 20, 2006).  The jury also found in defendant's favor on the remaining breach of

contract claim.  <u>Id.</u>

With this background, the Court now turns to plaintiff's motion for new trial and also sets

forth its findings of fact and conclusions of law, pursuant to Fed. R. Civ. P. 52(c), for the entry of

judgment on the nonjury claims for equitable relief under the ADA and the Rehabilitation Act.

<strong><u>DISCUSSION</u></strong>

**I.      Statute of Limitations**

      **A.      Applicable Statute of Limitations**

The Rehabilitation Act and ADA, like many federal civil rights statutes, do not contain a

statute of limitations, and thus the limitations period must be borrowed from the state cause of

action most appropriate or most analogous to a plaintiff's claim.  <u>See</u>, <u>e.g.</u>, <u>Gaona v. Town &</u>

<u>Country Credit</u>, 324 F.3d 1050, 1054-55 (8th Cir. 2003) (discussing the framework for borrowing

state statute of limitations to Rehabilitation Act and ADA claims under <u>Wilson v. Garcia</u>, 471

U.S. 261 (1985), and <u>Goodman v, Lukens Steel Co.</u>, 482 U.S. 656 (1987)); <u>Everett v. Cobb</u>

<u>County Sch. Dist.</u>, 138 F.3d 1407, 1409 (11th Cir. 1998) (same); <u>Soignier v. American Bd. of</u>

<u>Plastic Surgery</u>, 92 F.3d 547, 550-51 (7th Cir. 1996) (same).  Where a plaintiff alleges a violation

in a non-employment case, a state's personal injury statute of limitations has generally been

applied.[6]  Gaona, 324 F.3d at 1055 ("Since the Supreme Court's ruling in Goodman, most Courts

of Appeals, with the exception of the Fourth Circuit, have applied the state statute of limitations

for personal injury actions to claims under the Rehabilitation Act and the ADA.") (footnote and

citations omitted)); accord Soignier, 92 F.3d at 551; Everett, 138 F.3d at 1409.  In the District of

Columbia, this limitations period is three years, and thus a three-year limitations period is applied

in Rehabilitation Act and ADA cases.  Stewart, 2006 WL 626921, at *8-9; Doe v. Southeastern

Univ., 732 F. Supp. 7, 8-9 (D.D.C. 1990).

### B.    Waiver

Plaintiff first contends that the jury should not have been permitted to consider the statute of

limitations defense because defendant waived it.  See Pl.'s Mem. at 1-5; Pl.'s Reply at 5-8.

Plaintiff contends that, although defendant raised the defense in its answer, the defense was

waived because defendant failed to assert the defense during discovery or in the summary

judgment phase of litigation.  This Circuit has held, however, that the statute of limitations

defense is "sufficiently raised for purposes of Rule 8 by its bare assertion" in an answer.

Daingerfield Island Protective Soc'y v. Babbitt, 40 F.3d 442, 445 (D.C. Cir. 1994) (internal

quotation marks omitted); accord Kulzer v. Pittsburg-Corning Corp., 942 F.2d 122, 125 (2d Cir.

---

[6] Employment discrimination cases are governed by other provisions of the Rehabilitation Act and ADA not at issue here.  Thus, several courts have held that disability discrimination claims in the employment context will be barred for failure to exhaust administrative remedies within the shorter time periods specified in Title VII of the Civil Rights Act of 1964.  See Gupta v. Northrop Grumman Corp., 462 F. Supp. 2d 56, 58 (D.D.C. 2006) (concluding that the limitations period set forth in Title VII at 42 U.S.C. § 2000e-5 is applicable to employment discrimination actions brought under the ADA based on the reference thereto in the ADA, 42 U.S.C. § 12117(a)); Stewart v. District of Columbia, No. 04-1444, 2006 WL 626921, at *3-4 (D.D.C. Mar. 12, 2006) (same); Turner v. District of Columbia, 383 F. Supp. 2d 157, 176 (D.D.C. 2005) (concluding that the Title VII limitations period also applies to employment discrimination claims brought under the Rehabilitation Act).  The Court has no occasion to address that issue in this case.

1991) (holding that defendant's failure to assert the defense in any pretrial motions did not waive

defendant's limitations defense because "[t]he assertion of a limitations defense in the answer

preserved [defendant's] right to raise the defense both during the first trial and before the second").

The assertion of the defense in the answer adequately puts the opposing party on notice of the

defense and affords him the opportunity to respond to the defense.  Daingerfield Island, 40 F.3d at

444.  Thus, where a defendant has raised the defense in its answer, it is "not required to reassert

the defense" in a summary judgment motion to preserve the issue for resolution at a later stage.

Id. at 445.

Indeed, in Daingerfield Island, the court rejected the plaintiff's argument that a defendant

waived a limitations defense by waiting as late as a remand following an appeal before asserting

the defense by motion.  Id.  Here, the delay has not been as egregious.  Defendant notified plaintiff

in response to an interrogatory on its affirmative defenses that it asserted that plaintiff "failed to

timely file his lawsuit after first receiving notice that the University would not re-admit him to the

Graduate program without satisfying certain requirements."  Pl.'s Mot. for New Trial, Ex. 1.[7]

---

[7]  Plaintiff's interrogatory and defendant's response state, in full, as follows:

Interrogatory No. 15: Please state the factual basis for any affirmative defenses
raised in your answer filed herein, the identities of all witnesses who will testify
thereto, and the identity of all documents which support any such defense.

Answer to Interrogatory No. 15: Mr. David Long failed to meet the academic
requirements for Howard University for receiving a Ph. D. degree.  He also failed
to timely file his lawsuit after first receiving notice that the University would not
re-admit him to the Graduate program without satisfying certain requirements.

Pl.'s Mot. for New Trial, Ex. 1.  Plaintiff contends that this clear assertion of a statute of
limitations defense applies only to plaintiff's contract claims and is, in any event, factually
inadequate.  It is self-evident, however, that the response to the interrogatory does not limit the
issue of timeliness to the contract claims, containing no reference to the contract claims or other

(continued...)

Defendant also raised the defense in motions in limine filed one month before trial commenced. See Def.'s Mot. in Limine (filed Nov. 9, 2006).

The cases cited by plaintiff in support of finding waiver are readily distinguishable, and do not undermine the holding of Daingerfield Island.  In Rainey v. District of Columbia,  892 F. Supp. 283 (D.D.C. 1995), the court found that a defendant had waived a statute of limitations defense where the defendant had failed to assert the defense in its amended answer and its pretrial statement.  Id. at 285.  Raney is inapplicable here because the defense was preserved in the answer and also was asserted in pretrial motions.  In Anderson-Bey v. District of Columbia, 466 F. Supp. 2d 51 (D.D.C. 2006), the court considered whether a pre-suit notice requirement pertaining to claims against the District of Columbia had been waived, and found a waiver even though the notice defense had been asserted in the District's answer.  Id. at 66.  However, Anderson-Bey did not have occasion to address Daingerfield Island's binding authority on waiver of the separate defense of statute of limitations, and thus cannot be relied upon to support a waiver in the present circumstances.

Based on the preservation of the statute of limitations defense in defendant's answer and the assertion of the defense during pretrial proceedings, the Court adheres to its earlier holding that defendant did not waive the limitations defense.

---

[7](...continued)
indication that, on its face, it can be so limited.  Moreover, although factual detail is lacking, defendant's assertion of untimeliness based on the date plaintiff "first receiv[ed]" notice of the refusal to re-admit him without conditions nonetheless put plaintiff on notice that defendant was continuing to pursue a statute of limitations defense and provided an opportunity for plaintiff to further pursue that issue during discovery.  And even if the discovery response could be read as plaintiff contends, Daingerfield Island precludes a finding of waiver given defendant's assertion of the statute of limitations defense in defendant's answer and during the pretrial conference.

**C.      Accrual**

Plaintiff next contends that a new trial is warranted because the jury instruction on the

statute of limitations did not fully apprise the jury of applicable law and contained other

prejudicial errors.  Plaintiff contends that it was error to omit an instruction on the "continuing

violation" doctrine, the lulling doctrine, and the difference between new discrete acts of

discrimination falling within the three-year limitations period and denials of reconsideration of old

requests.  Plaintiff further alleges that the instruction contained language biased in favor of

defendant's theory of the case.  The Court begins with the text of the instructions and plaintiff's

accrual arguments, and then addresses each of plaintiff's other arguments in turn.

**1.      General -- Discovery Rule**

The instruction first described the function of a statute of limitations and the role of the

jury in determining the factual question of when the cause of action accrues, and then directed the

jury to consider several factors in that analysis:

> The statute of limitations begins to run when the injured party knows both
> that he has been injured and that the party against whom he asserts a claim was the
> cause of that injury.  One has a duty to investigate matters affecting one's affairs
> with reasonable diligence under all of the circumstances.  Once the plaintiff
> actually knows, or with the exercise of reasonable diligence should have known, of
> some injury, its cause-in-fact, and some evidence of wrongdoing, then he is bound
> to file his cause of action within the applicable limitations period, measured from
> the date of his acquisition of the actual or imputed knowledge.
> Mr. Long filed his claims on July 9, 2002.  In this case, I have determined
> as a matter of law that the Rehabilitation Act claim accrued when Mr. Long knew,
> or with the exercise of reasonable diligence should have known, that the
> University, as he alleges, declined his request for modifications of its policies or
> rules.  Whether, and if so when, this actually happened and Mr. Long knew or
> should have known of that occurrence and his injury is for you to decide as a
> question of fact.  If you find that the claim accrued before July 9, 1999, then it will
> be barred.
> If, on a date later than July 9, 1999, Mr. Long asked the University to
> reconsider its decision not to modify its policies or rules, or asked the University
> for the same modification he had previously requested, his claim is still barred by

the statute of limitations if, before July 9, 1999, Mr. Long knew, or by the exercise
of reasonable care should have known, that the University had declined his request
for a modification.

Final Jury Instructions, at 38-39 (Def.'s Opp., Ex. I).

The first quoted paragraph of the instruction is based on the fundamental principle that a

claim accrues under the Rehabilitation Act and the ADA based on the discovery rule applied in

discrimination cases generally -- that is, "when the plaintiff knew or had reason to know of the

injury serving as the basis for his claim." Stewart, 2006 WL 626921, at *3; see also Fox v.

DeSoto, 489 F.3d 227, 233 (6th Cir. 2007) ("Under federal law, the limitations period begins to

run when a plaintiff knew or should have known of the injury that forms the basis of the claim.");

Everett, 138 F.3d at 1410 (concluding that claims of disability discrimination accrue "when the

plaintiff is informed of the discriminatory act"); Soignier, 92 F.3d at 551 (holding that, under the

ADA, "discovery of the original act of discrimination, not future confirmation of the injury or

determination that the injury is unlawful, is when the statute of limitations begins to run")

(emphasis in original).

Plaintiff does not allege error with this paragraph, but asserts instead an error in the second

quoted paragraph in limiting the accrual date to the date plaintiff knew, or should have known,

that "the University . . . declined his request for modifications of its policies or rules." See Pl.'s

Mem. at 10 ("a violation of the Rehabilitation Act does not occur at the moment when a covered

entity declines to provide requested accommodations").  Plaintiff contends that his actual or

imputed knowledge of denial of the modification is not dispositive because the provision of a

reasonable accommodation under federal law is an "interactive process" that involves negotiation

and potential alternate modifications -- and this process did not, in his view, end until after July 9,

1999.  Id.  The availability of an interactive process, however, does not alter the applicability of

-16-

Case 1:02-cv-01374-JDB   Document 195   Filed 09/05/07   Page 17 of 36

the discovery rule.[8]  See Soignier, 92 F.3d at 552-53 (rejecting plaintiff's contention that the point

for accrual is "when this interactive process between the parties breaks down" because the

discovery of the original discriminatory act nonetheless enables a plaintiff to protect his rights);

see also Pantazes v. Jackson, 366 F. Supp. 2d 57, 70 (D.D.C. 2005) (explaining that "[b]ecause

the interactive process is not an end in itself, it is not sufficient for [plaintiff] to show that the

[defendant] failed to engage in an interactive process," and requiring proof of a failure to make a

reasonable accommodation).  Simply put, "[c]laims of discrimination accrue when the plaintiff is

informed of the discriminatory act," regardless of the possibility of discussions or other process

thereafter. See Everett, 138 F.3d at 1410.

Plaintiff also contends that the reference to accrual based on a pre-1999 denial of his

request for modification is erroneous because it was legally impossible for a denial of

accommodation to occur until plaintiff submitted a formal application for readmission and was

accepted as a student.  See Pl.'s Mem. at 10-11; Pl.'s Reply at 4-5.  Plaintiff asserts that this has

been defendant's position during the course of the litigation, and is reflected in the

nondiscrimination regulations governing recipients of federal assistance, citing 45 C.F.R. §§ 84.42

and 84.43.  But the text of section 84.42 is not limited to those who have submitted applications,

and instead more broadly states: "Qualified handicapped persons may not, on the basis of

handicap, be denied admission or be subjected to discrimination in admission or recruitment by a

---

[8]  Plaintiff did not request an instruction about the "interactive process" in his proposed instructions (ECF Doc. No. 118, 153, 175) or during any of the hearings on the instructions.  He thus has failed to preserve his objection to the absence of an instruction describing the interactive process.  See Fed. R. Civ. P. 51(c) and (d).

recipient to which this subpart applies."  45 C.F.R. § 84.42(a) (2006).[9]   More significantly, the

general prohibition against discrimination in the ADA and in the Rehabilitation Act (see 42

U.S.C. § 12182(a) and 29 U.S.C. § 794(a)) is applicable to those, like defendant, who receive

federal financial assistance, even absent a formal application from a handicapped person.  This

general prohibition is reflected in 45 C.F.R. § 84.4, which states:  "No qualified handicapped

person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of,

or otherwise be subjected to discrimination under any program or activity which receives Federal

financial assistance."   Thus, plaintiff's contention that it was legally impossible for his cause of

action to accrue based on defendant's pre-1999 actions is erroneous.

### 2.      Continuing Violations and Discrete Acts

Plaintiff next urges that, even assuming a violation occurred before July 9, 1999, he was

entitled to a "continuing violation" instruction -- that is, that the jury could conclude that, as long

as one act fell within the limitations period (i.e., after July 9, 1999), other related acts that took

place outside the limitations period were actionable as part of a continuing violation.  See Pl.'s

Mem. 7-9; Pl.'s Reply at 8-10.   In response, defendant argues that the Supreme Court in National

Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), foreclosed application of the

"continuing violation" doctrine in cases involving "discrete acts" of alleged discrimination.  Def.'s

Opp. at 9-11.  Plaintiff counters that Morgan is limited to employment discrimination cases.  Pl.'s

Reply at 8.

In Morgan, the Supreme Court rejected the applicability of the continuing violation

doctrine in cases involving discrete acts of discrimination in the context of addressing the

---

[9]  This regulatory language has been in effect at all times during the course of events
giving rise to this litigation.

timeliness of an employee's claims under Title VII.  536 U.S. at 113.  The Supreme Court held

that "discrete discriminatory acts are not actionable if time barred, even when they are related to

acts alleged in timely filed charges."  Id.  It further explained that a discrete discriminatory act

occurs "on the day it happened," and gave as examples termination, failure to promote, denial of

transfer, and refusal to hire.  Id. at 110, 114.  The Supreme Court contrasted discrete acts of

discrimination with hostile work environment claims, for which the continuing violation doctrine

remained available, because hostile work environment claims by "[t]heir very nature involve[]

repeated conduct," and further explained that "a single act of harassment may not be actionable on

its own."  Id. at 115.

Although Morgan discussed the continuing violation doctrine in the context of Title VII,

many courts have held that an alleged failure to provide a requested accommodation under the

Rehabilitation Act or the ADA is also a "discrete act" under Morgan and thus cannot rest on a

continuing violation theory to make it timely.[10]  See, e.g., Cherosky v. Henderson, 330 F.3d 1243,

1246-47 (9th Cir. 2003) (holding that denial of employees' request for respirators under the

Rehabilitation Act was a discrete act of discrimination under Morgan); Szedlock v. Tenet, 61 Fed.

Appx. 88, 93 (4th Cir. 2003) (holding that denials of hearing-impaired employees' multiple

requests for accommodations under the Rehabilitation Act were each discrete acts of

discrimination under Morgan); Becerra v. Earthlink, Inc., 421 F. Supp. 2d 1335, 1343 (D. Kan.

---

[10]  Indeed, courts have recognized the applicability of Morgan to discrimination claims generally, including claims brought under 42 U.S.C. §§ 1981 and 1983.  See Hildebrandt v. Illinois Dep't of Natural Resources, 347 F.3d 1014, 1036 n.18 (7th Cir. 2003) (rejecting availability of continuing violation doctrine to claims under 42 U.S.C. § 1983, because principles of Morgan were found applicable); Sharpe v. Cureton, 319 F.3d 259, 267 (6th Cir. 2003) (same); Turner v. District of Columbia, 383 F. Supp. 2d 157, 168 (D.D.C. 2005) (same); Kinley v. Norfolk S. Railway Co., 230 F. Supp. 2d 770, 776-77 (E.D. Ky. 2002) (rejecting availability of continuing violation doctrine to claims under 42 U.S.C. § 1981).

2006) (reasoning that, under <u>Morgan</u>, "rejection of an employee's proposed accommodation is a discrete act" that begins the ADA limitations period); <u>Lipka v. Potter</u>, No. 03CV381A, 2006 WL 839421, at *4 (W.D.N.Y Mar. 28, 2006) (holding that claim for reasonable accommodation under the ADA was time-barred; "the continuing violation doctrine applies only to cases of alleged hostile work environment or other claims which involve a series of acts necessary to comprise the alleged discriminatory act"); <u>see</u> <u>also</u> <u>Elmenmayer v. ABF Freight Sys.</u>, 318 F.3d 130 (2d Cir. 2003) (holding that denial of request for accommodation of religion is a discrete act under <u>Morgan</u>).  In short, there is no principled basis for declining to apply <u>Morgan</u> to denials of requests for reasonable accommodation under the Rehabilitation Act or ADA.

Plaintiff believes these cases are nonetheless inapplicable because they are employment discrimination cases, and his case is not.  Although the case law is certainly more abundant in the employment context, <u>Morgan</u> also has been held to apply outside of the employment context because the concept of a "discrete act" that a plaintiff can readily discern, and for which recourse can then be sought, is not limited to the employment context.  <u>See</u> <u>Carpinteria Valley Farms v. County of Santa Barbara</u>, 344 F.3d 822, 829 (9th Cir. 2003) (applying <u>Morgan</u> to landowners' First Amendment and due process claims against local government under 42 U.S.C. § 1983, finding no reason to limit the "discrete acts" analysis to Title VII); <u>Estrada v. Trager</u>, No. 01-4669, 2002 WL 31053819, at *5 (E.D. Pa. Sept. 10, 2002) (applying <u>Morgan</u> to patient's claims against physician under the ADA and Rehabilitation Act for alleged failure to provide sign language interpreter as a reasonable accommodation).

Applying the "discrete acts" analysis in <u>Morgan</u> to the facts of this case, it is readily apparent that defendant's negative responses to plaintiff's requests for accommodation of his disability prior to July 9, 1999 were each "discrete acts."  Defendant's written responses in

November 1995 and April 1998, each standing alone, informed plaintiff that substantially more than a defense of his dissertation would be required if he were to return to the University.  <u>See</u> Pl.'s Ex. 26 (notifying plaintiff that the University time limits on validity of academic credits and completion of degrees would apply); Pl.'s Ex. 28 (notifying plaintiff that a comprehensive examination on the core courses required in the Physiology Ph.D. program and further review of his dissertation would be required).  Unlike a hostile work environment claim, which requires "repeated conduct" to support a claim (<u>Morgan</u>, 536 U.S. at 115), a refusal to provide a requested accommodation can occur in a single action, as it did here.  Like a termination or nonpromotion, a refusal to provide the requested accommodation is "easy to identify" (<u>id.</u> at 114), and requires no further adverse action to support a claim.  That refusal is thus a "discrete act" for which the continuing violation doctrine is unavailable.  Although defendant repeated its refusal to provide the requested accommodation in subsequent memos and letters -- e.g., the letter from the University president dated July 9, 1999, and the letter from Dean Taylor dated March 9, 2004 -- those additional actions were not necessary to support the discrimination claim.

### 3.    Reconsideration

Plaintiff's final accrual argument is that the Court did not adequately instruct the jury on how to evaluate the conduct of plaintiff and defendant after July 9, 1999 -- that is, the jury instructions allegedly failed to distinguish between new discrete acts of discrimination within the limitations period, and requests for reconsideration of a previously denied request, which may not revive a time-barred claim.  Pl.'s Mem. at 11-14.  Plaintiff characterizes the instruction as providing the jury the "single option" of considering plaintiff's post-1999 attempts to gain admission to the University as requests to reconsider a previous decision.  <u>Id.</u>  Defendant responds that an instruction on requests for reconsideration was appropriate in light of the evidence

presented, and that the instruction permitted the jury to find that plaintiff's post-1999 conduct gave

rise to new discrete acts of discrimination.  See Def.'s Opp. at 17-21.

      As a threshold matter, the Court notes that plaintiff does not seriously dispute that the

instruction correctly states the law on the relationship between the statute of limitations and

requests for reconsideration.  It is well-settled that "[m]ere requests to reconsider . . . cannot

extend the limitations periods applicable to the civil rights laws."  Delaware State College v.

Ricks, 449 U.S. 250, 261 n.15 (1980); see Soignier, 92 F.3d at 553 ("Rather than an independent

wrong, the denial of [an internal] appeal merely confirmed the Board's earlier decisions," and thus

did not affect the accrual date); Martin v. Southwestern Virginia Gas Co., 135 F.3d 307, 310 (4th

Cir. 1998) ("An employer's refusal to undo a discriminatory decision is not a fresh act of

discrimination.") (internal citation and quotation marks omitted); Stewart, 2006 WL 626921, at *6

(holding that a plaintiff cannot "re-start the statute of limitations by re-requesting the denied

accommodation").  Thus, the instruction correctly states that:

> If, on a date later than July 9, 1999, Mr. Long asked the University to reconsider its
> decision not to modify its policies or rules, or asked the University for the same
> modification he had previously requested, his claim is still barred by the statute of
> limitations if, before July 9, 1999, Mr. Long knew, or by the exercise of reasonable
> care should have known, that the University had declined his request for a
> modification.

Final Jury Instructions, at 38-39 (Def.'s Opp., Ex. I).

      Plaintiff's primary challenge to the instruction, then, lies in whether the wording of the

instruction foreclosed or otherwise impermissibly limited the jury in considering whether

defendant's post-1999 conduct constituted new "discrete acts" of discrimination, as plaintiff now

contends.  The Court concludes that it did not.

      Plaintiff argues that the phrase "asked the University to reconsider its decision not to

modify its policies or rules" informs the jury that, as a factual matter, the University had made a final decision prior to the July 9, 1999 limitations date, thereby depriving the jury of the opportunity to consider for itself when the University had made a final decision on plaintiff's request for an accommodation of his disability.  See Pl.'s Mem. at 12-13.  Assuming arguendo that plaintiff adequately raised this objection during the lengthy conference on jury instructions,[11] the language highlighted by plaintiff does not, in fact, inform the jury of the date of the University's decision.  Plaintiff omits reference to the paragraph immediately preceding the instruction on reconsideration which clearly states that the jury is assigned the "question of fact" of determining "whether, and if so, when" plaintiff knew or should have known that the University declined his request for accommodation:

> In this case, I have determined as a matter of law that the Rehabilitation Act claim accrued when Mr. Long knew, or with the exercise of reasonable diligence should have known, that the University, as he alleges, declined his request for modifications of its policies or rules.  Whether, and if so when, this actually happened and Mr. Long knew or should have known of that occurrence and his injury is for you to decide as a question of fact.  If you find that the claim accrued before July 9, 1999, then it will be barred.

---

[11] As defendant notes, this issue was not raised in plaintiff's proposed instructions (see ECF Doc. No. 118, 153, 175) nor was it raised during the all-day conference on instructions.  The statute of limitations was, indeed, the subject of much of the hearing, but the matter of limiting the jury's discretion in the phrasing of the reconsideration paragraph was not the focus.  Instead, plaintiff's counsel focused his arguments on his request to include an instruction on continuing violations, the necessity of an official decision, and the lulling doctrine.  See Official Tr., Dec. 18, 2006, at 51-58; see also Pl.'s Objections, ECF Doc. No. 175, at 6.

On the subject of whether the instruction adequately permitted the jury to find new discrete acts of discrimination within the limitations period, counsel acknowledged that the instructions would permit the jury to do so.  Specifically, plaintiff's counsel argued that, accepting the Court's holding on continuing violations, "discrete violations that occur within the statute of limitations" would not be barred, and the Court responded "You'll be able to argue that.  All I can do is give a general instruction on the law.  I can't instruct the jury how to apply the law to the facts of this case."  See Official Tr., Dec. 18, 2006, at 57.  Counsel responded "[o]kay," without seeking any further changes in the paragraph discussing reconsideration.  Id.

Final Jury Instructions, at 38 (Def.'s Opp., Ex. I) (emphasis added).   No limitations are placed with respect to the point in time at which the jury may find that plaintiff knew or should have known of any denial of his request.  The instruction then proceeds to discuss how the jury is to weigh the matter of reconsideration, providing that this part of the instruction is conditional:  "If, on a date later than July 1999, Mr. Long asked the University to reconsider its decision not to modify to its rules or policies, or asked the University for the same modification, his claim is still barred . . . if before July 9, 1999, Mr. Long knew . . . or should have known, that the University had declined his request for modification."  Id. at 38-39 (emphasis added).

Collectively, the first and second paragraphs allowed the jury to consider plaintiff's characterization of the evidence that "[t]he positions of the parties were in flux until some time after Long submitted his second application for admission," and thus plaintiff did now know, or could not have reasonably known, that his requested accommodation was denied until the University responded to his two applications for admission.  See Pl.'s Mem. at 7-8 and 12-13. Accordingly, the Court concludes that there was no error in providing a conditional instruction to the jury on the impact of requests for reconsideration.

### D.    Lulling

Plaintiff further contends that the Court improperly omitted an instruction on the lulling doctrine, which, if supported by the evidence, could have countered defendant's statute of limitations defense.  See Pl.'s Mem. at 14-15.  "[T]he doctrine of lulling applies when the defendant 'ha[s] done something that amounted to an affirmative inducement to plaintiffs to delay bringing action,' as when a defendant promises to settle a dispute out of court."  Jankovic v. Int'l Crisis Group, --- F.3d ---, 2007 WL 2089703, at *4 (D.C. Cir. July 24, 2007) (citations omitted). If the defendant has lulled a plaintiff into inaction by such affirmative inducements, the defendant

is "estopped from asserting the statute of limitations as a bar to plaintiff's claims."  <u>See</u> <u>Goldman</u> <u>v. Bequai</u>, 19 F.3d 666, 673 (D.C. Cir. 1994); <u>see also</u> <u>Monroe v. Williams</u>, 705 F. Supp. 621, 625 (D.D.C. 1988) ("It is clear from the case law that defendant must have somehow acted <u>affirmatively</u> to prevent plaintiff from filing his lawsuit.") (emphasis in original).

The Court found at the close of plaintiff's case that there was "neither evidence of affirmative misleading nor evidence that Howard University was saying we are thinking about it [plaintiff's requested accommodation]," and thus denied plaintiff's request for an instruction on the lulling doctrine.  <u>See</u> Official Tr., Dec. 18, 2006, at 4.  Plaintiff renews his argument that he was entitled to a lulling instruction, based on (1) the University "changing its position" in the 1998 letter, (2) "referring plaintiff to various officials who indicated a willingness to help," and (3) "communications from the university president indicating that things could be worked out once Long submitted an application."  Pl.'s Mem. at 15.

The trial evidence pertaining to those matters -- none of which plaintiff cites -- wholly fails to indicate any affirmative reassurance by defendant that plaintiff's requested accommodation would eventually be granted -- that is, permission to return to the University to defend his dissertation, with no further coursework or examination requirements.  To the contrary, the 1998 letter notified plaintiff that his return to the University would be subject to the additional conditions of (1) "passing a comprehensive examination on the core courses required in the Physiology Ph.D. program"; and (2) further review of his dissertation, including the possibility of beginning a dissertation topic anew.  As for his communications with University officials and the office of the university president, by plaintiff's own account, his communications yielded no reassurances whatsoever.  <u>See</u> Pl.'s Ex. 29.  In his letter dated June 14, 1999, to the University president, he refers to his communications with "Deans, Administrators, etc.," and contends that

they all "have 'amnesia'" with respect to the alleged promise years earlier to "freeze [his] student status and the status of [his] dissertation defense." Id. at 3.  He further states: "I believe now, with every fiber of my being, that Howard University is treating me harshly because I brought that medical lawsuit against the University." Id. at 3.  This letter -- sent more than three years before plaintiff filed this lawsuit -- reveals plaintiff's understanding at the time of the responses from the University, and wholly contradicts his present assertion that the University provided him reassurances that lulled him into inaction.

Nor does Swygert's response dated July 9, 1999 contain any reassurance that plaintiff's claim will be resolved.  See Pl.'s Ex. 30.  Indeed, it states that "[y]ou should understand that the Department is required to consider your status in light of the Rules and Regulations for the Pursuit of Academic Degrees for the Graduate School," and further notes that a final version of plaintiff's dissertation was never accepted by the faculty committee.  Id. at 1.  Far from reassuring, these statements suggest that plaintiff will not be permitted to defend his dissertation without satisfying further conditions.

Jury instructions not supported by the evidence are properly refused.  See Coleman v. Parkline Corp., 844 F.2d 863, 867 (D.C. Cir. 1988); Camalier & Buckley-Madison, Inc. v. Madison Hotel, Inc., 513 F.2d 407, 420 n.92 (D.C. Cir. 1975); see also Coletti v. Cudd Pressure Control, 165 F.3d 767, 776 (10th Cir. 1999) ("When a court rules as a matter of law that a party introduced insufficient evidence to warrant the jury's consideration of a claim, it is perfectly within the court's discretion to decline to instruct the jury on the matter.").  Here, as a matter of law, plaintiff failed to produce sufficient evidence of affirmative actions by defendant, or reassurances of redress, that could reasonably have lulled plaintiff into inaction.  Therefore, plaintiff's request for a jury instruction on the lulling doctrine was properly denied.

E.     **Evidence Supporting Finding that Statute of Limitations Bars the Disability Discrimination Claims**

The jury verdict finding that plaintiff's Rehabilitation Act claim is barred by the statute of limitations leaves unresolved the non-jury claims for equitable relief under the Rehabilitation Act and ADA, which were reserved for resolution by the Court. Based on an independent review of the evidence submitted at trial, the Court finds that those claims, too, are barred by the statute of limitations, and will therefore enter judgment in favor of defendant on those equitable claims pursuant to Fed. R. Civ. P. 52.

As discussed above, a three-year limitations period applies to plaintiff's claims of failure to make a reasonable modification under the Rehabilitation Act and ADA, and that period began to run when plaintiff knew, or with the exercise of reasonable diligence, should have known, that the University declined his request for modifications of its policies or rules.  If the claim accrued before July 9, 1999, it will be barred.

There is an abundance of evidence to show that plaintiff knew or reasonably should have known that the University had declined his request to return to defend his dissertation, and effectively, to waive the time-to-degree requirements -- that is, the ten-year rule for coursework, and the five-year rule for Ph.D candidacy.  By letter dated September 26, 1995, plaintiff describes the University's initial adverse response at a July 1995 meeting on his request for reinstatement to defend his dissertation:

> During the meeting I stated that we had tried to resolve this matter by contacting Dr. Bernell Coleman, Director of Graduate Studies and Dr. LaVal Cothran, Chairman of the Department of Physiology and Biophysics, but to no avail. . . . To my surprise, the only choices that came out of those conversations were: there is nothing that we can do for you; therefore, you can try to contact Dr. Scott concerning these matters or you can go ahead and contact your lawyer.

Pl.'s Ex. 25.  Plaintiff's self-styled "official request" for reinstatement to defend his dissertation

was then pending with Dr. Scott.  Pl.'s Ex. 20.  The University sent plaintiff a written response to this "official request" by letter dated November 21, 1995.  See Pl.'s Ex. 26.  This letter stated that he would be required to apply for readmission to the Graduate School of Arts and Sciences and, furthermore, stated that "the Department will have to consider your status in light of provisions in the Rules and Regulations" applicable to the Graduate School, quoting the ten-year rule on coursework viability and the five-year rule on Ph.D. candidacy.  Id.  The letter further advised plaintiff that acceptance of his dissertation by the faculty would be required before plaintiff could defend it.  Id.  Any reasonable person receiving this letter would have concluded that the University had denied the request for reinstatement to defend the dissertation, with a waiver of the time-to-degree requirements, particularly in light of the adverse response only four months earlier from Dr. Coleman and Dr. Cothran.

Plaintiff contends, however, that he does not recall receiving this letter.  See Official Tr., Dec. 13, 2006, Excerpt 1, at 121-22.  The Court finds it more likely than not that plaintiff did, in fact, receive it.  Plaintiff admits that the letter listed his correct address.  Id. at 121.  He also admits having lapses in memory from 1995 to the present due to various medications, which quite plausibly account for his inability to recall receiving the letter.  Id. at 122-23, 133-36.  Moreover, that letter was followed by a two-year period of inaction by plaintiff, strongly suggesting that some incident -- probably this letter -- had thwarted plaintiff's hopes for reinstatement.  Most significantly, plaintiff's own description of a January 1998 attempt to meet directly with the University president  suggests that plaintiff had received an adverse response to his official request, for a meeting directly with a University president is not typically a student's first avenue of recourse.  See Pl.'s Ex. 29 (describing January 1998 attempt to meet with the president and meetings with his staff "to no avail").

At any rate, the November 1995 letter does not stand alone.  A few months after plaintiff's January 1998 attempt to meet with the president, the Dean of the Graduate School of Arts and Science, Orlando Taylor, stated that the Graduate School had again reviewed his eligibility, and that in light of the time-to-degree requirements in the University Rules and Regulations, his Ph.D. candidacy would be restored only if, first, he "pass[ed] a comprehensive examination on the core courses required in the Physiology Ph.D. program," and second, the dissertation committee had reviewed his dissertation project and determined it to be current or approved another acceptable research proposal.  Pl.'s Ex. 28.  This letter, dated April 30, 1998, also was a clear denial of plaintiff's request to simply be reinstated to defend his dissertation.

Plaintiff testified that he also does not recall receiving this letter, noting that the letter contains an error in his address.  Official Tr., Dec. 13, 2006, Excerpt 1, at 126, 132-33.  The Court, once again, finds it more likely than not that plaintiff did, in fact, receive it.  The letter states that it was sent "By Facsimile," which would render the typographical error of no consequence.  Pl.'s Ex. 28 at 1.  Additionally, it is quite plausible that plaintiff's memory problems, caused by his medications, account for his inability to recall this letter.  See Official Tr., Dec. 13, 2006, Excerpt 1, at 133-36.  Plaintiff's own letter to the University president dated June 14, 1999, asking the president "to intercede," serves as further corroboration that he had received some form of adverse communication from the University -- probably the April 1998 letter -- since it is likely that plaintiff's letter would only be sent if there were reason to believe he had no further recourse from the Graduate School of Arts and Sciences.  See Pl.'s Ex. 29.  In that letter, he asks the president "to intercede on my behalf and grant me permission to defend my dissertation," complaining that his earlier attempts have run into "brick walls."  Id. at 1.  He further states, "I believe now, with every fiber of my being, that Howard University is treating me

harshly because I brought that medical lawsuit against the University."  Id. at 3.  Collectively, these various pieces of evidence lead the Court to find that it is more likely than not that plaintiff received the April 1998 letter.  This finding is further supported by plaintiff's statement of undisputed material facts, in which counsel states, on plaintiff's behalf, that "[t]wo and a half years after Howard refused to accommodate Long's disability, Long received another letter from Dean Taylor in 1998," citing the letter dated April 30, 1998.  Def.'s Ex. 38, at 10.[12]

In short, the November 1995 and April 1998 letters are definitive responses from the head of the Graduate School of Arts and Sciences that any reasonable person would construe as a denial of plaintiff's request for reinstatement to defend his dissertation with a waiver of the time-to-degree requirements.  Plaintiff himself construed those responses as such, as indicated in his 1999 letter to the president of the University.  The fact that he held out hope that the president would intercede on his behalf does not change the accrual date for the statute of limitations because that date is measured by the standard of when a person, with the exercise of reasonable diligence, should have known of his injury.  See Stewart, 2006 WL 626921, at *4 (statute of limitations under the ADA acrrues "when the plaintiff knew or had reason to know of the injury serving as the basis for his claim."); see also Fox v. DeSoto, 489 F.3d 227, 233 (6th Cir. 2007) ("Under federal law, the limitations period begins to run when a plaintiff knew or should have known of the injury that forms the basis of his claim."); Soignier, 92 F.3d at 551 (holding that under the

---

[12]  Plaintiff objected to the admissibility of his undisputed statement of material facts in support of his motion summary judgment, on the ground that there was nothing establishing that plaintiff "saw, read, [or] endorsed" the document.  See Official Tr., Dec. 13, 2006, Excerpt 1, at 128.  As the Court explained in its ruling from the bench, the document was admissible because it was filed on behalf of plaintiff as a true statement of fact, and its reliability as proof of plaintiff's actual knowledge could be considered through cross-examination, e.g., a "disavowal" by plaintiff.  Id. at 128-29.  At no time during the testimony that followed did plaintiff disavow the accuracy of the document.  See id. at 129-40.

ADA "discovery of the original act of discrimination, <u>not</u> future confirmation of the injury or determination that the injury is unlawful, is when the statute of limitations begins to run") (emphasis in original).

Plaintiff contends that actions taken by the University after July 9, 1999 constituted new discrete acts of discrimination that fall within the three year limitations period.[13]  Having reviewed the evidence, the Court, as the finder of fact on the nonjury claims, finds that plaintiff did not submit new requests for accommodation, and finds instead that his requests for readmission in November 1999 and July 2001, along with his June 1999 request for relief to the University president, were only part of his multi-year attempt to gain reinstatement to defend his dissertation with no further conditions.  Thus, the Court finds that they are more logically construed as attempts to obtain reconsideration of the previous denials.  Neither a request for reconsideration -- and this includes repeating a request previously denied -- or a denial of such a request extends or restarts the statute of limitations.  <u>See</u> discussion <u>supra</u> at 22 (citing <u>Delaware State College</u>, 449 U.S. at 261 n.15 and other cases).  In applying for readmission, plaintiff was not seeking simply to be readmitted, or to obtain some other accommodation.  His testimony strongly suggests he sought the same modification he had been seeking since the time he first approached the University about returning -- that is, reinstatement solely to defend his dissertation.  Plaintiff acknowledged as much in response to defense counsel's questions at trial about his requests for readmission:

_____

[13]  On plaintiff's non-jury claims, for the reasons stated <u>supra</u> at 18-21 and 24-26, the Court again rejects plaintiff's contention that the continuing violations doctrine or the lulling doctrine affects the accrual of the statute of limitations.  In short, the continuing violation doctrine is not legally viable for a failure to make reasonable accommodation claim under the Rehabilitation Act or ADA in light of <u>Morgan</u>, 536 U.S. at 110, 113-15, and the lulling doctrine is not applicable because plaintiff failed to present any evidence of affirmative conduct by defendant that lulled plaintiff into inaction.

Q: This lawsuit today that we're here for today, before you filed this lawsuit in July 2002, you never received a response to your applications that were submitted in late '99 and again in 2001, correct?

A: That sounds correct, yes.

Q: . . .[I]f you had heard from the University that you could come back but that you'd have to retake courses or take an exam to show you had current knowledge, would you have come back to Howard University under those conditions?

A: I would have pursued this [lawsuit]. No. I would pursue this [lawsuit] because that wasn't the agreement. So, no, I wouldn't do that.

Official Tr., Dec. 13, 2006, Excerpt 1, at 130-31. Based on the foregoing findings of fact and conclusions of law, the Court holds that plaintiff's equitable claims under the Rehabilitation Act and ADA accrued before July 9, 1999, and thus are barred by the statute of limitations. Accordingly, the Court will enter judgment on those claims in favor of defendant.

## II.     Educational Contract

Plaintiff contends that the Court committed an error of law in granting defendant's motion for judgment as a matter of law on his "educational contract" claim at the close of his presentation of the evidence. See Pl.'s Mem. at 15-16. At trial, plaintiff had restyled this claim as arising from an alleged contract the University had with students, including plaintiff, to comply with federal disability law, which it allegedly violated by denying the requested accommodation. See Official Tr., Dec. 18, 2006, at 59-60 (plaintiff's counsel's description of the educational contract claims as "basically the same as the Rehabilitation Act claim."). Plaintiff contends that he was not required to present proof of a contract -- that is, a school policy identifying the Rehabilitation Act as a requirement it followed -- because defendant was required "by operation of law" to follow all aspects of the Rehabilitation Act in any event. See Pl.'s Mem. at 15. Defendant contends that judgment as a matter of law on this claim was proper because there was a failure of proof that

would leave the jury without any context to determine the existence of such a contract or its terms. Def.'s Opp. at 26.

After reviewing the trial record once again, the Court concludes that judgment as a matter of law was appropriate.  As the Court explained at trial,  no evidence had been presented -- either through testimony or exhibits -- as to what the terms of the "educational contract" were, and the failure of proof could not be cured by counsel's blanket reference to federal law as setting the terms of the alleged contract.  Official Tr., Dec. 18, 2006, at 119-20.  Plaintiff's motion for new trial also does not identify any such evidence, and the absence of evidence is fatal to plaintiff's claim.  Under District of Columbia law, "evidence of an enforceable agreement" is required to support a breach of contract claim.  Rosenthal v. Nat'l Produce Co., 573 A.2d 365, 369  (D.C. 1990).  Furthermore, an enforceable agreement can only be found where a contract is "sufficiently definite as to its material terms . . . that the promises and performance to be rendered by each party are reasonably certain."  Id. at 370, quoted in Duffy v. Duffy, 881 A.2d 630, 634 (D.C. 2005); see also Rosenthal, 573 A.2d at 370 ("'If the agreement be so vague and indefinite that it is not possible to collect from it the intention of the parties, it is void because neither the court nor jury could make a contract for the parties.") (quoting Robinson v. Gardiner, 76 A.2d 354, 356 (1950)).  Plaintiff's theory that a contract was created "by operation of law" (Pl.'s Mem. at 15), in the absence of any oral or written agreement, thus must be rejected.[14]  The mere existence and

---

[14]  Other courts have declined to interpret contracts as broadly incorporating all federal discrimination law in the absence of a contract provision supporting that interpretation.  For example, the Sixth Circuit, in an unpublished opinion, considered whether a nondiscrimination clause providing that "the Agent will comply with the provisions of any Federal, State, or Local law prohibiting discrimination in housing on the grounds of race, color, sex, creed, or national origin" also covered discrimination on the ground of disability.  Capitol Park Limited Dividend Housing Ass'n v. Jackson, 202 Fed. Appx. 873, 878 (6th Cir. 2006).  The court rejected the

(continued...)

applicability of federal discrimination laws does not create an additional common law contract claim to supplement a claim directly under those laws.

This absence of evidence, standing alone, supports judgment as a matter of law in defendant's favor on the educational contract claim.  However, it bears noting that dismissal of the claim was further supported by plaintiff's failure to provide adequate notice to defendant -- either in the complaint or through discovery -- that its breach of contract claim was grounded on an alleged violation of federal law governing reasonable accommodation.  Id. at 119-20.   The breach of contract claim raised in the complaint states as follows:

> 31.  A contractual relationship existed between the Plaintiff and the Defendant whereby Howard promised to award Long a degree upon his successful completion of the requirements for said degree.
> 32.  Long's successful completion of those requirements was a condition precedent to Howard's obligation to award the degree.
> 33.  Howard further agreed that Long could re-enter the University when he was physically able, and defend his dissertation.
> 34.  Long has applied twice for re-admission to the University but Howard has refused to act on his application.
> 35.  Howard has unjustly prevented Long from completing his degree requirements by refusing to admit Long in order that he might defend his dissertation.  Defendant has substantially contributed to the non-occurrence of the condition precedent, and consequently has breached its contract with Long.
> 36.  Long's damages described herein are a direct consequence of Howard's breach of contract.

---

[14](...continued)
contention that disability discrimination was covered based on the plain language of the contract, which excluded any mention of disability law.  Id. at 878.  The court further observed that "[t]his is not to say that [an aggrieved person] could not sue [defendant] for violating federal prohibitions on disability discrimination because [he] almost certainly could.  But plaintiff cannot argue that such a failing constitutes a breach of contract of the above-quoted contract provision."  Id.
    In this case, the Court is lacking a contract to interpret in the first instance.  Capitol Park illustrates why the wholesale absence of the alleged contract is significant.  See also Fowler v. McCrory Corp., 727 F. Supp. 228, 231 n.3 (D. Md. 1989) (rejecting plaintiff's contention that all applicable laws are incorporated into a contract for the purpose of determining whether a violation of 42 U.S.C. § 1981 has occurred).

Compl. ¶¶ 31-36.  Nowhere in the breach of contract count does plaintiff describe the breach as

being based on violation of the Rehabilitation Act.  Indeed, in plaintiff's own motion for summary

judgment, he described the "educational contract" as consisting instead of an agreement "to award

Long a Ph.D. upon the successful completion of the academic requirements for the degree," and

sought summary judgment based on the University's allegedly undisputed actions in preventing

him from performing his side of the contract.  See Pl.'s Mem. in Supp. of Mot. for Summ. J. at 20-

23; see also Long, 439 F. Supp. 2d at 80-81 (discussing breach of contract claims in the context

presented by plaintiff's brief).

Plaintiff suggests that he is being held to a higher notice standard than defendant, and

notes that defendant has been permitted to raise the statute of limitations defense despite

inadequate notice to plaintiff.  See Pl.'s Mem. at 4 n.2.  This suggestion is without merit.  As the

Court has explained above, defendant asserted the statute of limitations defense in its answer and

in response to an interrogatory.  The complaint describing the breach of contract claim, in

contrast, does not provide comparable notice of the restyled educational contract claim.

## CONCLUSION

For the foregoing reasons, the Court will deny plaintiff's motion for new trial.  The Court

will thus enter judgment in defendant's favor on the Rehabilitation Act and contract claims tried to

the jury.  The Court will also enter judgment in defendant's favor on plaintiff's non-jury equitable

claims under the Rehabilitation Act and the Americans with Disabilities Acts, finding those

claims barred by the statute of limitations.  In light of this disposition, the Court declines to reach

the issues raised in defendant's cross-motion for judgment as a matter of law, and will thus deny

that motion without prejudice.  A separate order and judgment accompanies this memorandum

opinion.



_____/s/_____
JOHN D. BATES
United States District Judge

Date:  September 5, 2007