# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID LONG,** | |
| **Plaintiff,** | |
| v. | **Civil Action No.  02-1374 (JDB)** |
| **HOWARD UNIVERSITY,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

Plaintiff David Long, a former doctoral ("Ph.D.") candidate at Howard University, brought this action against the University alleging, among other things, discrimination on the basis of disability in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.. On December 20, 2006, the jury returned a verdict finding that defendant had failed to provide a reasonable accommodation for plaintiff's disability in violation of the Rehabilitation Act, but concluding that the claim was barred by the statute of limitations.  After post-trial motions challenging the verdict were filed, the Court upheld the verdict and also entered judgment in defendant's favor on plaintiff's non-jury equitable claims under the Rehabilitation Act and the ADA, finding those claims also were barred by the statute of limitations.  See Long v. Howard Univ., 512 F. Supp. 2d 1 (D.D.C. 2007).

Despite -- or perhaps because of -- the adverse judgment on all claims, plaintiff thereafter stated his intent to seek an award of attorneys fees for alleged discovery violations, notwithstanding the closure of discovery almost two years earlier.  The Court granted leave to file the motion, observing that the timeliness of the motion was in serious question and reserving the resolution of that issue until after full briefing.  See Order at 1-2 (filed Sept. 20, 2007).  The

motion for discovery sanctions is now fully briefed.  Plaintiff contends that he should be awarded over $186,000 in attorneys fees under Fed. R. Civ. P. 37(c), on the grounds that (1) defendant allegedly concealed information and documents that were responsive to plaintiff's interrogatories and requests for production of documents; and (2) defendant improperly failed to admit that plaintiff was disabled within the meaning of the ADA or Rehabilitation Act, in response to his requests for admission.  Defendant opposes the motion as untimely and on the merits.  Also pending is defendants' contested bill of costs seeking to recover $11,766.75 for court reporter fees and other miscellaneous costs and plaintiff's motion to stay determination of costs.  For the reasons stated below, the Court will deny plaintiff's motion for sanctions and award costs to defendant in the amount of $11,632.75, but will defer taxation of those costs until the appeal of this matter has concluded.[1]

## I.       Alleged Concealment of Documents and Other Information

Plaintiff propounded discovery requests in February 2003, that, inter alia, sought information concerning all students who had been allowed to exceed  the University time limits on validity of academic credits (the "ten-year rule"), an accommodation that he alleged was unlawfully denied to him.[2]  Plaintiff contends that the University had compiled a list of students

---

[1]  For ease of reference, the Court will refer to plaintiff's motion for sanctions and his reply as "Pl.'s Mot. for Sanctions" and "Pl.'s Reply," and to the University's opposition thereto as "Def.'s Opp." When referring to other discovery motions that have been filed in this case, the Court will use an abbreviated title of the brief and the document number assigned in the ECF docket.

[2]  The interrogatories at issue stated:

[No. 3] Please describe all circumstance regarding any student in the Graduate School of Arts and Sciences who has requested an exception to application of the Rules and Regulations during the last 15 years, including but not limited to allowing additional time to complete degree requirements (including but not limited to exceptions allowed under Article VI, Section 1(C) and (d) and Section 6, and Article V, Section 1(C) and (D) and Section 6), including in your answer the identity of the student, nature of and reason for

(continued...)

for whom time limits had been waived -- information responsive to his discovery requests -- but

concealed that information from plaintiff until February 2004 and withheld related documentation

until September 2005.  See Pl.s' Mot. for Sanctions at 1, 8-10.

As plaintiff acknowledges, the Court first addressed the adequacy of the University's

discovery responses over four years prior to the filing of his present motion for sanctions. The

University initially responded to plaintiff's discovery requests on April 8 and 14, 2003, objecting

---

[2](...continued)
the exception, Howard's response, identi[t]y of the faculty who granted or denied the
request, applicable dates, type of degree and the graduate department involved, and if the
exception was to allow additional time to complete degree requirements, please provide
the amount of time allowed.

[No. 5] Identify all occasions since 1987 when a graduate student in the Graduate School of Arts
and Sciences has been awarded a graduate degree (Masters or Ph.D.) after being enrolled in that
degree program for more than five (5) years (either consecutively or intermittent), including in
your response the names of the student; his/her academic department; the year the degree was
awarded; the dates of entry into the program; the reasons for awarding the degree beyond the five
(5) year limit; and the identity of all Howard personnel involved in making the decision to award
the degree.

See Pl.'s Mot. For Sanctions at 3 & Ex. 1, at 5-6, 8.

 The document requests at issue sought production of:

26.     All documents related to communications between Howard and any student in the
        Graduate School of Arts and Sciences who has requested an extension of time to complete
        a graduate degree, from 1987 to the present.

27.     All documents related to any allowance of additional time (beyond the maximum in the
        Rules and Regulations) for any student to complete any Ph.D. requirements in the Howard
        Graduate School of Arts and Sciences from 1987 to present.

31.     All documents which identify any student who has been granted a graduate degree in the
        Graduate School, where additional time to complete the degree was needed, from 1987 to
        the present.

33.     All documents which contain statistical or other data indicating the length of time it takes
        or has taken students of Howard University Graduate School to complete any and all
        graduate degree programs from 1987 to the present.

See Pl.'s Mot. For Sanctions at 3 & Ex. 2, at 5-6.

on the grounds that the requests were overly broad and unduly burdensome, and improperly

sought the release of confidential student information in violation of the Family Education Rights

and Privacy Act, 20 U.S.C. § 1232(g).  See Def.'s Opp., Ex. B; Pl.'s Mot. for Sanctions, Ex. 1.

The University also provided a limited response to the interrogatories, including a terse

acknowledgment that "[t]here have been occasions since 1986-1987 when a student in the

Graduate School was awarded a graduate degree after being enrolled in a program beyond the

time limit."  Pl.'s Mot. for Sanctions, Ex. 1, at 9.  On May 19, 2003, plaintiff filed a motion to

compel, and the University reiterated its previous objections (emphasizing that there were 36

degree programs in the Graduate School), and also disputed the relevance of the information.  See

Pl.'s Mot. to Compel (Doc. No. 16, filed May 19, 2003); Def.'s Opp. to Mot. to Compel (Doc. No.

30, filed June 16, 2003).  After holding a hearing on August 20, 2003, the Court narrowed

plaintiff's discovery requests and required the University to make disclosure from approximately

ten academic departments, with other limitations applying.[3]  See Order ¶ 3 (filed Aug. 20, 2003).

---

[3]  The Order stated: "Defendant shall produce the requested information subject to the following
limitations: (a) the information need be provided only with respect to approximately 10 departments that
most closely relate to or resemble the Department of Physiology; (b) the information need be provided
only with respect to the 1992-2001 time frame; (c) no dissertations, theses, or other academic materials
need be provided; and (d) defendant may redact student names and replace them with initials, numbers, or
other identifying information."  See Order ¶ 3 (filed Aug. 20, 2003).

Plaintiff notes that, at the August 2003 hearing, defense counsel misrepresented to the Court that
no student had received credit for a course more than ten years old, and suggests that the Court relied on
that statement in issuing the Order.  See Pl.'s Mot. for Sanctions at 4; Pl.'s Reply at 5.  However, a full
reading of the transcript indicates that defense counsel made that representation mistakenly, based on
incomplete information, and, indeed, the Court later in the hearing obtained clarification from defense
counsel that he actually could not make that representation:

THE COURT: . . . [W]hat about Mr. Williams' point that, first of all, he doesn't see a
representation in interrogatory responses that no one has ever been allowed to exceed the ten-year
limit, and secondly, that he would be surprised if you could make that representation because his
understanding is that you've not yet reviewed all 36 graduate programs to gather the information?

(continued...)

That Order also denied plaintiff's earlier request for sanctions.  Id. ¶ 7.

    After further wrangling between the parties concerning, among other things, which ten departments had to produce information,[4] on February 26, 2004 plaintiff obtained a list of more than 100 students who had taken longer than ten years to complete their Ph.D. degrees -- a list that was revealed through the deposition of Associate Dean Emmanual Glakpe one day earlier, referred to as "Table 1."  See Pl.'s Mot. for Sanctions at 5-9 & Ex. 13.  This information had been in the University's possession since March 17, 2003, when it first received plaintiff's discovery requests.  See id. Ex. 14; see also id. at 7-9 (summarizing Glapke Depo. at 161-74).  In the University's view, the mere fact of a student's enrollment for a period exceeding ten years was not probative of whether the "10-year rule" had been waived because the list did not reveal whether the coursework was "counted" toward the degree or whether "course restoration" requirements were applied to the student -- information not readily available and not shown on the list.  See Def.'s Opp. at 10-11.  After filing a further motion to compel on July 29, 2005, plaintiff obtained

---

[3](...continued)
MR. LATTIMORE: If the representation is not formally written, there have been two depositions taken to date, one of Dr. Coleman . . . as well as -- . . . Dr. Cothran.
        . . .

THE COURT: . . . Have they testified that no department at Howard University has ever allowed anyone to exceed the ten-year rule?

MR. LATTIMORE: I can't say that.  They have testified that based on their years of service at the university and their work, that they're not aware of anyone receiving a Ph.D. beyond the ten-year limit.

THE COURT: In the course of discovery, there's a big difference between what you just said and what I asked.

See Hr'g Transcript  at 48-49 (Aug. 20, 2003) (Def.'s Opp., Exhibit C).

    [4]  The Court held a teleconference with the parties to address the ongoing discovery dispute on November 21, 2003, and another teleconference on December 16, 2003.

the available course restoration forms and other related documents by September 2005.   See Pl.'s

Mot. for Sanctions at 1 n.1.  Plaintiff did not seek sanctions at that time.

With this background, the Court considers whether plaintiff's motion for sanctions is

timely and whether plaintiff is entitled to sanctions.  Rule 37(c)(1) states:

> (1) Failure to Disclose or Supplement.  If a party fails to provide
> information or identify a witness as required by Rule 26(a) or (e),
> the party is not allowed to use that information or witness to supply
> evidence on a motion, at a hearing, or at a trial, unless the failure
> was substantially justified or is harmless.  In addition to or instead
> of this sanction, the court, on motion and after giving opportunity to
> be heard:
>> (A) may order payment of the reasonable expenses,
>>    including attorney's fees, caused by the failure;
>> (B) may inform the jury of the party's failure; and
>> (C) may impose other appropriate sanctions, including any
>>    of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1).  Although this provision does not establish any express time limits

within which a motion for sanctions must be filed, unreasonable delay may render such a motion

untimely.  See Brandt v. Vulcan, Inc., 30 F.3d 752, 756 (7th Cir. 1994) (observing that, in the

context of Rule 37(b), "unreasonable delay" standard applies even in the absence of a specified

time limit); Mercy v. County of Suffolk, New York, 748 F.2d 52, 56 (2d Cir. 1984) ("[A] motion

for Rule 37 sanctions should be promptly made, thereby allowing the judge to rule on the matter

when it is still fresh in his mind . . . . Indeed, the motion should normally be deemed waived if it

is not made prior to trial . . . ."); Shamis v. Ambassador Factors Corp., 34 F. Supp. 2d 879, 886

(S.D.N.Y. 1999) ("While Rule 37 does not establish any time limits within which a motion for

sanctions must be filed, unreasonable delay may render such motions untimely").

The timeliness of a motion for sanctions depends on such factors as when the movant

learned of the discovery violation, how long he waited before bringing it to the court's attention,

and whether discovery has been completed.  See Brandt, 30 F.2d at 756; In re Teligent, Inc., 358

B.R. 45, 59 (Bankr. S.D.N.Y. 2006); see also Glenn v. Scott Paper Co., No. 92-1873, 1993 WL

431161, at *17 n.3 (D.N.J. Oct. 20, 1993) (holding that wrongful withholding of evidence should

have been addressed "before completion of discovery" through a Rule 37 motion for sanctions

and summary judgment phase of litigation was too late to address the alleged violations).

  Plaintiff's motion for sanctions is clearly untimely under the unreasonable delay standard.

His motion rests primarily on the alleged wrongful withholding of "Table 1," the course

restoration forms, and related information. But he obtained Table 1 on February 26, 2004, over

three years prior to the filing of his motion, and obtained the other documentation by September

2005, yet still delayed two years before seeking any sanctions.  During those years of delay,

discovery closed, the summary judgment phase was completed, counsel involved in the original

alleged violations left the University, new outside counsel took over representation of the

University's case, and a jury trial was held.  This substantial delay makes it significantly more

difficult to resolve a sanctions motion and to consider whether a sanction short of attorneys fees is

appropriate, such as informing the jury of a party's failure to timely disclose information.

Considering plaintiff's delay in bringing this motion until years after he became aware of

defendant's alleged actions, and almost two years after the close of discovery, the Court finds that

plaintiff unreasonably delayed in seeking sanctions for the alleged discovery violations pertaining

to the ten-year rule, and thus holds that this part of the motion is untimely.

  Assuming arguendo that the motion is timely, the Court would nonetheless deny the

motion on the merits.  As the Court's August 20, 2003 Order reflects, the interrogatories and

document requests at issue were overbroad and sought confidential information, and, hence, were

subsequently narrowed substantially.  The University's nondisclosure up to that point was thus

reasonable, for disclosure would have required waiver of some objections that ultimately were sustained. The University's response should have been forthcoming shortly thereafter, but other circumstances indicate that there was good cause for delay. A joint motion to extend discovery filed on November 12, 2003, states that discovery had, effectively, been put on hold "due to an accident suffered by defense counsel which recently kept him out of the office for over a month." See Joint Mot. to Extend Discovery at 1 (Doc. No. 46, filed Nov. 12, 2003). Catch-up on discovery included "a number of witnesses" who remained to be deposed, and was sufficiently substantial to warrant another joint motion for an extension. Id.; see also Second Joint Motion to Extend Discovery at 1 (Doc. No. 50, filed Jan. 20, 2004). Defense counsel's accident and extended office absence thus played a mitigating factor in the delay. After defense counsel's return to the office, additional discovery disputes arose that required the Court's intervention. See Pl.'s Mot. for Sanctions at 5-6 (describing teleconferences to resolve further disputes on November 21, 2003 and December 16, 2003). "Table 1" was produced two months later. This timing is certainly not laudable, but viewing the totality of the circumstances, the Court finds that the University's conduct does not warrant sanctions.[5]

## II.   Plaintiff's Requests for Admission

Plaintiff also seeks sanctions on the ground that the University improperly refused to admit that he was disabled within the meaning of the ADA or the Rehabilitation Act, in response to his requests for admission. See Pl.'s Mot. for Sanctions at 10-15. Plaintiff contends that

---

[5] The Court also notes that discovery in this case was unusually prolonged and contentious resulting from a lack of cooperation and efficient case management on both sides, a problem that plagued this case through trial. See Transcript of Pretrial Hearing at 4-5 (Dec. 1, 2006) (setting forth the Court's earlier observations on history of delay at second pretrial conference). The Court's intervention was needed multiple times to require disclosures from plaintiff as well as defendant. See, e.g., Order (filed Aug. 20, 2003); Order (filed May 3, 2004). Given this background, it would be particularly inappropriate to single out defendant for sanctions for the delay at issue.

sanctions are appropriate because the University had actual knowledge from a prior lawsuit that

plaintiff had a lung disease -- whether under the name pulmonary fibrosis or some other similar

pathological classification -- that limited his ability to walk and breathe; hence, the University, in

his view, had no basis for denying that plaintiff was "disabled" under federal law.  See id.

Defendant responds that it had several grounds for denying the request for admission, including

the vagueness of the request and the University's reasonable belief that it might prevail on the

issue.  Defendant also points out that it stipulated that plaintiff was disabled shortly before trial

commenced.

The Court begins with the text of Rule 37(c)(2), which specifically addresses sanctions for

failure to admit:

> Failure to Admit.  If a party fails to admit what is requested under
> Rule 36 and if the requesting party later proves a document to be
> genuine or the matter true, the requesting party may move that the
> party who failed to admit pay the reasonable expenses, including
> attorney's fees, incurred in making that proof.  The court must so
> order unless:
> (A) the request was held objectionable under Rule 36(a);
> (B) the admission sought was of no substantial importance;
> (C) the party failing to admit had reasonable ground to believe that it might prevail
>     on the matter; or
> (D) there was other good reason for the failure to admit.

Fed. R. Civ. P. 37(c)(2).

As a threshold matter, the Court considers whether the motion for sanctions for an

allegedly improper failure to admit is timely.  Like Rule 37(c)(1), subsection (c)(2) does not set

forth a specific time limit for the filing of a motion for sanctions based on an improper failure to

admit.  But for the reasons stated above, the Court concludes that an "unreasonable delay"

standard applies.  However, the assessment of timeliness under subsection (c)(2) differs from

(c)(1) in one significant respect.  Where requests for admissions are at issue, the matter of what

constitutes unreasonable delay must be measured from the time the verdict (or, where applicable summary judgment) has been entered because a litigant cannot seek sanctions until he has "proven" the matter set forth in the request for admission.  See Morrison v. Greeson, No. 06-cv-24, 2007 WL 2237624, at *16-17 (S.D. Ind. July 31, 2007) (holding that sanctions under Rule 37(c)(2) for improper failure to admit are not recoverable "unless and until [the movant] actually proves, at trial, that . . . [the] responses were untruthful") (emphasis in original); Earl Realty, Inc. v. Leonetti, 49 B.R. 333, 336 (E.D. Pa. 1985) (explaining that, with respect to failures to admit, "[l]ogic and reason dictate that a motion for Rule 37(c) expenses should be made at or within a reasonable time after trial and, in any event prior to appeal.").  Measuring unreasonable delay from the time of the verdict is necessary because, as the advisory committee notes to Rule 37(c)(2) explain, the rule "is intended to provide posttrial relief in the form of a requirement that the party improperly refusing the admission pay the expenses of the other side in making the necessary proof at trial."  Fed. R. Civ. P. 37(c)(2) advisory committee notes; see also Kasuri v. St. Elizabeth Hosp. Med. Ctr., 897 F.2d 845, 856 (6th Cir. 1990) (explaining that evaluation of timeliness of a Rule 37(c)(2) motion must consider advisory committee note comment that the provision was "designed to provide post-trial relief").   In this case, plaintiff waited ten months before filing his motion for sanctions -- less than the delay in seeking redress for the nondisclosures discussed above, yet still substantial.  But there was a mitigating factor in that delay -- after the verdict was returned, both sides filed motions for a new trial.  With the possibility of a new trial, the legitimacy of seeking sanctions for a failure to admit arguably might have been in question -- even though, as defendant points out, those post-trial motions did not ultimately revive the dispute over whether plaintiff was "disabled."  The motions were denied on September 5, 2007, and plaintiff's motion for sanctions was filed less than two months later, on

October 31.  On balance, then, the Court concludes that the ten-month delay between the verdict and the filing of the motion was not unreasonable given the totality of the circumstances.  The Court thus turns to the merits of the motion.

Plaintiff has, in effect, proven the "truth of the matter" addressed in the requests -- that he is disabled within the meaning of the ADA and Rehabilitation Act -- by securing a stipulation from the University that he is disabled under those statutes and obtaining a jury verdict that included a finding of disability.[6]   Sanctions are thus required unless the Court finds that one of the exceptions applies to the University.  The University contends that it had "reasonable ground to believe that it might prevail on the matter" and "there was other good reason for the failure to admit."  In considering whether there was "other good reason for the failure to admit," the good faith actions of the respondent should be considered.  See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1555 (10th Cir. 1996).

The Court finds that, considering all relevant circumstances here, sanctions should not be awarded because there was "other good reason for the failure to admit," and hence will not consider whether the University had "reasonable ground to believe it might prevail on the matter."  Although the University invokes the latter exception, the arguments it raises focus on the problems with the requests as drafted and the subjective good faith basis of its response -- grounds which relate more to whether there was "other good reason for the failure to admit."

---

[6]  The stipulation states: "David Long is an individual with a lung disability as defined in the Americans with Disabilities Act and the Rehabilitation Act."  See Stipulations (Doc. No. 155, filed Dec. 4, 2006).  The final jury instructions so informed the jury, and the jury verdict stated "yes" in response to the question: "Did Mr. Long prove, by a preponderance of the evidence, that the University had notice of his disability including the limitations arising therefrom, that he requested a specific reasonable accommodation for such limitations, that, with the requested accommodation, he was otherwise qualified to complete the Ph.D. requirements, and that the University failed to make a reasonable accommodation?"  See Jury Verdict at 1 (Doc. No. 180, filed Dec. 20, 2006).  There is thus no support for the University's contention that plaintiff did not "prove[] . . . the matter true."

First, although the requests were not held objectionable by the Court -- and indeed, the University did not raise this objection in its responses -- the requests were nonetheless significantly flawed.  The two requests at issue used very broad and ambiguous language, stating only that "[p]laintiff is disabled within the meaning of the Americans with Disabilities Act Title II, 42 U.S.C. § 12,101," and substantially the same with respect to the Rehabilitation Act, with only the statutory citation changed.  See Pl.'s Mot. for Sanctions, Ex. 16 (Def.'s Response to Pl.'s First Request for Admissions at 1-2 (quoting Pl.'s Request for Admissions)).   As this Court explained in OAO Alfa Bank v. Center for Public Integrity, No. 00-2208, 2006 WL 1313309 (D.D.C. May 12, 2006), "Rule 36 does not authorize requests for admissions of law without relating the legal conclusion to the facts of the case."  See Fed. R. Civ. P. 36(a) (authorizing requests for admissions "relating to facts, the application of law to fact, or opinions about either"); see also id. advisory committee note ("The amended provision does not authorize requests for admissions of law unrelated to the facts of the case") (emphasis added).   Here, it is self-evident that the relevant requests for admissions at issue did not specify any "facts of the case" whatsoever.  Thus, although the requests were not "held objectionable pursuant to Rule 36(a)" (see Fed. R. Civ. P. 37(c)(2)(A)),  it is doubtful that, if challenged, the requests would have been sustained.

But even if the requests could fairly be characterized under Rule 36(a) as "relating to . . . the application of law to fact" -- that is, because, in plaintiff's view, the University should have known that his request referred to the lung disease described in the complaint -- the ambiguity as to the relevant facts would present a significant problem.  As plaintiff acknowledges, the ADA and Rehabilitation Act define disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."  42 U.S.C. § 12102(2); 29

U.S.C. § 705(20)(B).  Whether a person is "disabled" within the meaning of the statute depends

on the extent of the limitations on major life activities caused by the disability, and cannot be

determined simply by reference to a medical diagnosis.  See Toyota Motor Mfg., Kentucky, Inc.

v. Williams, 534 U.S. 184, 198-99 (2002).  As the Supreme Court explained in Toyota:

> It is insufficient for individuals attempting to prove disability status under this test
> to merely submit evidence of a medical diagnosis of an impairment.  Instead, the
> ADA requires those "claiming the Act's protection . . . to prove a disability by
> offering evidence that the extent of the limitation [caused by their impairment] in
> terms of their own experience . . . is substantial.

Id. at 198 (quoting Albertson's, Inc. v. Kirkingurg, 527 U.S. 555, 567 (1999), alterations in

original); accord, e.g., Thompson v. Rice, 422 F. Supp. 2d 158, 170 (D.D.C. 2006) (holding that

"[m]erely submitting a medical diagnosis of an impairment is insufficient to establish disability

status," and that the "impairment must "prevent or severely restrict the individual in the major life

activity at issue").

Plaintiff presumes that it was obvious that, as a result of his lung disease, he was

substantially limited in the major life activities of breathing and walking.  But those major life

activities were not specified in the request for admission.  Without relating the impairment to the

major life activities that were substantially limited, the request for admission is difficult to

interpret, and the Court weighs this factor against an award of sanctions.  See 7 Moore's Federal

Practice § 37.71 (3d ed. 1997) ("[C]ourts will focus on the requests as literally framed by the

propounding party, and will not penalize a responding party who does not admit matters that are

not set forth in the request."); Apex Oil Co. v. Belcher Co. of New York, 855 F.2d 1009, 1017

(2d Cir. 1988) ("We do not believe that sanctions can be imposed . . . on the basis of composite

paraphrasing of several requests for admission.").  There is no reason to doubt that the University

in good faith believed that, although plaintiff suffered from a lung disease, he was not disabled

because he was not "substantially limited" in a major life activity.[7]  See Def.'s Opp. to Pl.'s Mot.

for Partial Summ. J. at 8-11 (Doc. No. 101) (arguing that plaintiff was not disabled because he

was not substantially limited in his ability to learn and work on his dissertation).  Plaintiff's

failure to specify any major life activity in the requests for admissions makes the University's

denials understandable-- even if ultimately unavailing once the major life activities at issue and

factual record were established elsewhere in the litigation.

        The University is not without fault here -- it failed to raise the vagueness objection in its

original responses to the requests for admissions, and a timely objection could have resulted in

plaintiff curing the defect.  However, in the aggregate, considering the deficiencies in the requests

for admissions, the importance of the factual characterization of the major life activities and the

extent of the limitation in assessing "disability," the lack of an adequate description of that matter

in the requests for admission, and the University's good faith belief in its denials, the Court finds

that there was "other good reason for the failure to admit" under Rule 37(c)(2).

## III.    Bill of Costs

        Defendant has submitted a bill of costs seeking to recover $11,766.75 for service of

process fees ($750.50), deposition transcripts ($10,676.25), witness fees ($40.00), and copying

costs ($300.00).  Plaintiff has moved to stay determination of costs until his pending appeal of the

---

[7]  Whether an individual is disabled often involves a detailed analysis of the facts alleged, and many conditions that, at first glance, sound like disabilities are not disabilities within the meaning of the ADA or Rehabilitation Act because they do not "substantially limit one or more major life activities." See, e.g., Toyota, 534 U.S. at 199-201 (reversing lower court determination that plaintiff's carpal tunnel syndrome was a "disability" under the ADA because the "substantially limited" analysis did not look at a proper class of major life activity, and remanding for further proceedings); Mitchell v. Yates, 402 F. Supp. 2d 222, 227-29 (D.D.C. 2005) (holding that seizures brought on by stress did not constitute a disability because plaintiff did not allege a substantial limitation on a major life activity);  Bell v. Gonzales, 398 F. Supp. 2d 78, 86-91 (holding that plaintiff's Tourette's Syndrome was not a disability on the record presented because it did not substantially limit him in a major life activity), reconsideration denied, 398 F. Supp. 2d 100 (D.D.C. 2005);

final judgment has been resolved.  Plaintiff also opposes many of the costs claimed by defendant, primarily on the ground that the costs were unnecessary.

The Court first turns to whether taxation of costs should be stayed pending resolution of the appeal.  Local Civil Rule 54.1(c) contemplates that, where a notice of appeal has been filed, the costs will not be "taxed" until "the court of appeals issues its mandate."  However, nothing in the rule prevents the Court from determining the amount of costs the prevailing party is entitled to recover and deferring taxation of those costs to a later date.  Plaintiff notes that this will lead to some inefficiency because an appellate decision may disturb the final judgment and, even if the judgment is left intact, the University may file a supplemental bill of costs after the appeal has concluded.  But the Court concludes that determining the amount of taxable costs presently is nonetheless the most prudent course because, as defendant points out, memories may fade in the year or so that the appeal will take, making an evaluation of costs substantially more difficult then.

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that, unless otherwise provided by law, "costs -- other than attorney's fees -- should be allowed to the prevailing party." The presumption that a prevailing party is entitled to costs as a matter of course is a "very powerful" one, and "a court may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so."  <u>Baez v. U.S. Dep't of Justice</u>, 684 F.2d 999, 1004 (D.C. Cir. 1982) (en banc) (per curiam).  Unsuccessful parties bear the burden of showing circumstances sufficient to overcome the presumption in favor of awarding costs to the prevailing party.  <u>Id.</u>

Plaintiff contends that costs should be denied <u>in toto</u> in this matter because "each party has

prevailed in part." See Pl.'s Surreply at 2. This is simply wrong. The Court entered a final judgment in favor of defendant and against plaintiff on all claims that went to the jury and all equitable claims that were resolved in a post-trial opinion. See Long, 512 F. Supp. 2d at 5-6, 11-26. In particular, the jury found that plaintiff's cause of action under the Rehabilitation Act accrued prior to July 9, 1999 (and the Court agreed), and that claim, hence, was barred by the statute of limitations. See Jury Verdict at 2. Plaintiff assumes that he is a "prevailing party" based on the jury finding that he was denied a reasonable accommodation for his disability. But that finding is of no moment in light of the jury's finding on the accrual date for the statute of limitations. The jury verdict on the separate breach of contract claim, and the Court's findings on the equitable claims, were also completely adverse to plaintiff. Thus, there is no basis for denying costs based on the contention that plaintiff prevailed in part in this case.

Plaintiff further suggests that taxation of costs is inappropriate because this is a civil rights case that he brought in good faith.[8] However, costs are routinely awarded to prevailing defendants in civil rights cases. See, e.g., McGill v. Faulkner, 18 F.3d 456, 460 (7th Cir. 1994) (observing that taxing costs against an unsuccessful litigant in civil rights litigation "serves the valuable purposes of discouraging unmeritorious claims and treating all unsuccessful litigants alike"); Thomas v. George Washington Univ., 286 F. Supp. 2d 38, 40 (D.D.C. 2003) (rejecting plaintiff's contention that costs should not be awarded because of a potential "chilling effect" on civil rights litigation, reasoning that an unmeritorious claim should be discouraged).

Finding that the presumption of awarding costs to the prevailing party applies here, the

---

[8] Plaintiff also contends that costs should be denied because of the misconduct alleged in his motion for sanctions. However, the Court has concluded earlier in this opinion that defendant did not engage in any misconduct warranting sanctions. For the same reasons, the conduct alleged does not warrant denial of costs. See also supra note 5.

-16-

Court turns to whether the items in defendant's bill of costs are appropriate.  The categories of allowable costs are set forth in 28 U.S.C. § 1920, and Local Civil Rule 54.1(d) sets forth a list of costs that are taxable as an administrative matter by the Clerk of Court.  The costs claimed by defendant are of the type enumerated in those provisions -- fees for serving subpoenas, court reporter fees for deposition transcripts, witness fees, and copying.  See 28 U.S.C. § 1920(2)-(4); Local Civil Rule 54.1(d)((6), (8), (9), (11).  Plaintiff does not dispute the costs of the expert witness fee ($40) or the copying costs ($300).  Plaintiff contends, however, that the subpoena service fees and deposition transcripts claims are, for many witnesses, unnecessary or otherwise not covered by those provisions.

Local Civil Rule 54.1(d)(11) provides that "the Clerk shall tax . . . costs of service of a subpoena on a witness who testified at a deposition, hearing or trial."  Plaintiff nonetheless contends that most of the subpoena service fees are not recoverable because they were unnecessary, in light of the demonstrated willingness of plaintiff's counsel to arrange and coordinate the witnesses' appearances.  See Pl.'s Opp. at 1-2.  As defendant points out, however, neither Local Civil Rule 54.1(d) nor 28 U.S.C. § 1920 requires that the subpoena be "necessary" in order for the cost to be recoverable.  Such costs are recoverable as a matter of course.  See Bell v. Gonzales, No. 03-0163, slip op. at 2 (D.D.C. Sept. 27, 2006); Kim v. Washington Metro. Area Transit Auth., No. 87-3204, 1988 WL 134949, at *1 (D.D.C. Dec. 5, 1988).

Plaintiff also claims that the fees are not recoverable for the subpoenas duces tecum that were issued to four individuals.[9]  See Pl.'s Surreply at 6-7.  The few courts to address the

---

[9]  These are the subpoenas issued to Barry Simon, Peter Berkman, Gloria Morote, and Katrina Briscoe.

recoverability of fees for subpoenas duces tecum have concluded that such costs are recoverable when issued in conjunction with the scheduled deposition of the witness receiving the subpoena. See Davis v. Sailormen, Inc., No. 05-1497, 2007 WL 1752465, at *3 (M.D. Fla. June 15, 2007); Reuther v. Smith, No. 01-3625, 2003 WL 22174275, at * 2 (E.D. La. Sept. 11, 2003).  The Court agrees that the costs of serving subpoenas duces tecum served in conjunction with a witness's scheduled deposition are recoverable because they satisfy the essential requirement in Local Civil Rule 54.1(d)(11) that the subpoena be issued to a witness "who testified at a deposition, hearing or trial."  However, Peter Berkman did not testify at any deposition, hearing or trial, and there is thus no basis for taxing costs ($134.00) for the subpoena duces tecum served upon him, either in the Local Rules or 28 U.S.C. § 1920.  The costs of serving subpoenas on the remaining witnesses -- Barry Simon, Katrina Briscoe, Gloria Morote, and John & ViCurtis Little -- will be awarded, in the amount claimed, $616.50.

The main battle, however, is over the costs of deposition transcripts, which total $10,676.25.  Defendant requests costs for 23 deposition transcripts.  In response, plaintiff contends that only the costs for the deposition transcripts of himself,[10] Laval Cothran, and Orlando Taylor are recoverable because that is the only testimony "necessary" to the statute of limitations defense that defendant prevailed upon.  See Pl.'s Opp. to Def.'s Bill of Costs at 3. Plaintiff also argues that the other transcript costs are not recoverable because the transcripts were not used at trial or attached to briefs filed with the Court.  Id. at 3-6.  His position, however, is

_____

[10]  With respect to his own deposition, plaintiff contests only a $65.00 court reporter appearance fee for his cancelled deposition on November 13, 2003, since he notified defense counsel of the cancellation one day earlier.  The cost is properly taxed, however, because plaintiff provided less than 24 hours notice and the University thus remained obligated to pay the appearance fee.  See Def.'s Reply in Support of Bill of Costs at 10.

based on a misunderstanding of the standard governing recovery of costs for deposition

transcripts.

The prevailing party is entitled to the fees of a court reporter for a transcript "necessarily

obtained for use in the case." 28 U.S.C. § 1920(2). The determination of necessity under section

1920(2) "must be made in light of the facts known at the time of the deposition, without regard to

intervening developments that render the deposition unneeded for further use." See Mother and

Father v. Cassidy, 338 F.3d 704, 712 (7th Cir. 2003); accord Johnson v. Holway, 522 F. Supp. 2d

12, 18 (D.D.C. 2007); Oetiker v. Jurid Werke, GmbH, 104 F.R.D. 389, 394 (D.D.C. 1982). To be

sure, Local Civil Rule 54.1(d) provides that "the Clerk," as a ministerial matter, shall tax the costs

of a deposition transcript "if the deposition was used on the record, at a hearing or trial." But the

local rule does not purport to enumerate the entire universe of taxable costs -- it addresses only

those costs that the Clerk may tax -- and certainly does not constrain the authority of the Court  to

award costs based on the statutory standard.

Here, all of the deposition transcripts at issue were "necessarily obtained for use in the

case" because (1) they were attached to motions and responsive briefs filed with the Court;

(2) plaintiff listed the witness in the joint pretrial statement as a witness who may be called at

trial; and/or (3) plaintiff designated the deposition testimony as evidence to be introduced at trial.

See Joint Pretrial Statement at 8-14, 32-46 (Doc. No. 111, filed Oct. 31, 2006); see also Def.'s

Reply in Support of Bill of Costs at 3-10 (summarizing the deposition testimony attached to

briefs and introduced at trial). These are circumstances under which a litigant would find it

necessary to obtain the deposition transcript -- that is, in order to prepare for supporting or

defending against a motion, or to prepare for direct- or cross-examination of a trial witness. The

fact that plaintiff ultimately did not call one of his listed witnesses to testify at trial is irrelevant because his listing of the witness in the first instance made it "necessary" for the other side to obtain the transcript for its anticipated use in the case.  See Cassidy, 338 F.3d at 712 (observing that "intervening developments" occurring after transcript has been obtained are irrelevant to evaluating necessity).

The Court has reviewed the invoices for each transcript, and determined that the costs are properly documented, with no improper costs for delivery or special features being claimed by defendant.  Having determined that all of the deposition transcripts identified in the bill of costs were "necessarily obtained for use in the case," the Court will award those costs in the full amount requested, $10,676.25.

## CONCLUSION

For the foregoing reasons, the Court denies plaintiff's motion for sanctions pursuant to Fed. R. Civ. P. 37(c)(1) and (2).  The Court grants in part and denies in part plaintiff's motion to stay determination of defendant's bill of costs.  The amount of costs to be taxed by the Clerk is $11,632.75, but taxation of costs will be stayed until the Court of Appeals resolves the pending appeal of the final judgment.  A separate order has been issued on this date.

/s/
_____
JOHN D. BATES
United States District Judge

Date:  June 25, 2008